JAMES ARCHER, Respondent, v. THE MERCHANTS' AND MANU-
FACTURERS' INSURANCE COMPANY, Appellant.

1. *Insurance, Fire—Materials, hazardous and extra hazardous, covered by policy, when.*—Defendant issued a policy of insurance upon a wagon-maker's shop, the property of plaintiff. By the conditions of the policy the company were not to be liable for damages resulting from "explosions caused by gunpowder, gas, or other explosive substances, nor for damages occasioned by the use of camphene, spirit gas, or burning fluid, unless otherwise expressly provided." In the building insured was a shop containing paints and a half barrel of benzine, which caught fire and caused the burning of the property. *Held*, that though the paints and benzine, disconnected and by themselves, would belong to the class excluded by the terms of the policy, yet, as it was proved that they were materials usual and customary in the manufacture of wagons, and generally kept in the same shop where wagons were made, they were covered by the terms of the policy, and evidence going to such proof was admissible.

2. *Practice, Civil—Amended Pleadings, when allowed.*—As a general rule, allowing an amended pleading to be filed out of time, when the defense had existed long previously, and no good reason is perceived for the delay, is a matter resting in the sound discretion of the court. But where the ends of justice will be subserved by granting the permission, it is better to allow it; and if the other party is taken by surprise, or a continuance is thereby occasioned, the court should put the defaulting party on terms.

3. *Insurance, Fire—Policy—Title of assignee to, how affected by antecedent equities.*—The assignee of a mutual insurance policy obtains a title wholly derivative, and he can have no greater rights than the assured. Where the assignment was made after the loss occurred, it gave the assignee an equitable interest and right to recover, subject to set-off against the assignor, such as an assessment made by the company on the premium note of the assignor, and all other equities.

*Appeal from St. Louis Circuit Court.*

*Hill & Jewett*, for appellant.

I. The court should have allowed the defendant to file its amended answer. Plaintiff is the assignee of Cook, the insured, after the fire, and the assignment subjects him to all the liabilities of Cook. The face of the policy fully notified Archer what Cook's liabilities were. Cook was a member of the company by the terms of the policy, and by the assignment could not give Archer any better position than he had himself. It would seem to be a strange doctrine that a member of a mutual insurance company can, after he has suffered a loss, assign his policy and

force his company to resort to an action on his note, even though he is insolvent, and thus escape the responsibility he assumed as a condition of the insurance. We know of no case in which an assignee with notice can stand in any better position than his assignor; and the question would seem only to be whether Cook, if plaintiff, could legally refuse to have deducted from the sum due on account of his loss an assessment made on his note, a part of which very assessment is made necessary to pay his own loss, as well as other losses by the company of which he is a member. Can he force the company to pay all his loss and then to sue him on his note to get a part of it back? Such a proceeding would seem to violate a well-known maxim in law as to multiplicity of suits, as well as common sense, and the court below did not give us the light of its reasons for the ruling. The very spirit of the mutual company is reciprocal liability—each to bear his share of the burden and receive his share of the benefit. The assessment by the company is not in the nature of a debt accrued after the assignment of the policy to Archer; but the liability to the assessment is a part of the contract, and whoever takes the contract takes it *cum onere*. (Ang. on Fire and Life Ins. § 222, p. 253; Wamscot Machine Co. v. Partridge & Co., 5 Fos., N. H., 369, and cases there cited.) The permission to file was not refused as a matter of practice as being out of time, and was not objected to by the counsel for plaintiff on that ground, but wholly on the ground that the offset could not be made against the assignee.

II. The next point is, that, under the section of the conditions referred to in the statement, we had a right to submit the question to the jury, or the court sitting as a jury, whether the fire was not caused by the explosion of benzine or the use of burning fluid, and that the testimony was sufficient to entitle us to go to a jury on the fact.

III. The third point is, that the words "a wagon-maker's shop and materials for manufacturing wagons" were not notice to the defendant that a paint-shop, with materials for mixing paint, and a part of which materials was benzine—a highly inflammable and explosive substance—was insured under those words. The proof is

that benzine has only been used for a few years in mixing paint, and there is no evidence that defendant had any knowledge of the use of that article in mixing paint, or that paint-shops were usually kept in wagon-makers' shops. A paint-shop is as well known as a distinct place of business from a wagon-maker's shop as it is from a tailor's shop; and it is a very forced construction of the words "material for manufacturing wagons" to say that they are notice to the defendant that they are meant to include a paint-shop with benzine in it.

By the conditions of insurance, section 3, painters' stock is named as extra hazardous, and by section 4 of same conditions it is required that the application shall state if the goods insured are extra hazardous, and the omission to make known any fact material to the risk renders the policy void. The application does not name painters' stock as a part of the materials used, and there is no evidence that the defendant knew that the custom for six or seven years had been to keep or use benzine as material to mix paint. The proof of such a custom for five or six years was not sufficient to imply notice to those not in the business of painting or wagon-making.

If the practice of using benzine in mixing paint is to be called a custom, then the proof was inadmissible, as it was not proved to have existed immemorially. If it is a usage of trade, then the proof must be that it is established, known, certain, uniform, reasonable, and not contrary to law. But in order to make this usage of trade binding, it must be proved to be known to the person who is to be bound by it. (2 Greenl. Ev. § 251.) In this case there is no evidence that any such usage of trade was known to the defendant as that a paint-shop with benzine and other inflammable material in it was a part of a wagon-maker's shop and materials for manufacturing wagons. Without such usage of trade there can be no pretense that the policy covered a paint-shop and materials, of which benzine was a part; and the proof of that usage of trade does not comply with the law in the very material point that it does not prove knowledge of that usage on the part of the defendant. We therefore say that the fact that benzine was kept in a paint-shop, and that

paint-shop in the wagon-maker's shop, was a fact material to the risk, and was concealed from the defendant by Cook. If the evidence of custom or usage of trade was admissible as far as it went, it did not go far enough, as it failed of proving notice to defendant.

*Glover & Shepley*, for respondent.

I. The allowing of the filing of an amended pleading is a matter discretionary with the court before whom the case was, and the court will not interfere with the exercise of this power unless it clearly appear that the discretion was not properly exercised. On the contrary, it is evident: 1, That even if the assignee was liable, the prosecuting of this set-off, just upon entering on the trial, after the defendant had already placed the cause at issue for more than a year, and after three months had elapsed after the alleged assessment, was such a change as would not be allowed without very good reasons shown why it had not been filed before. 2. The allowing this amended answer to be filed would clearly have operated as a surprise upon the plaintiff. If it were good at all against the assignee, he could defend by showing, either, (*a*) That it was an assessment for losses arising before Cook became a member. (*b*) That prior assessments to cover these losses had not been collected. (*c*) That this assessment was to cover losses happening after the loss occurred under the policy sued on. 3. The matter pleaded as a set-off could not be set up against the assignee, the plaintiff in this action. The assessment having been made after the original answer was put in, and more than a year after both the fire and the assignment, is not a claim that can be set up against the plaintiff. No liability arises except upon the assessment. (33 Barb. 610; 19 N. Y. 32.) Now, the policy (article 12 of conditions) provides that losses shall be payable in ninety days after ascertainment and proof. At the time of the commencement of this suit the loss had, by the terms of the policy, become payable. There was then no obligation on the part of Cook even to the defendant which could be recovered. Cook had assigned his interest and right to recover on the 13th of November previous, and by the terms of the

note at the time of the commencement of the suit the defendant could not have recovered against Cook, as the assessment was not made for about nine months afterward.

II. The proof was that benzine had been used for five or six years before the fire as one of the materials in the preparation of paint used for plaintiff's wagons, and that this use was universal in the city of St. Louis. Now, the insurance was not only upon a wagon-maker's shop and the articles, manufactured and unmanufactured, made therein, but on the materials used in the business. This must mean the usual and ordinary articles used in and about the manufacture of wagons, and the insurance is made correspondingly high on that account. The insurance, as effected, is upon this business, and whether it or the materials used in it are hazardous or extra hazardous is of no manner of importance, for it is that which is insured. If the company insured a manufactory of fireworks, it would scarcely contend that the presence of gunpowder vitiated the policy. In insuring a manufactory and the materials and stock in trade used in the manufacture there carried on, the company is bound to know how the trade is carried on, and what are the hazards of the trade as usually conducted. It may be that if the assured carried on his business in a more hazardous manner than his neighbors in the same trade, these facts might have some bearing on his right to recover. But, however that might be, no such case is made here, as the evidence is all one way as to the fact that he conducted his business in the usual manner, and used and mixed his paints with the same material, and in the same manner, as his neighbors. After the war broke out, and turpentine had become not only very dear, but almost impossible to obtain, painters were compelled to use other equivalent materials in the manufacture and mixing of paints. The only way this question can be argued to be material is that benzine is extra hazardous, and that it was not mentioned in the application. Now, if there is any necessity to show it, it is for the defendant to show it by offering in evidence the application of Cook; but it did not do so, and it is pure assumption to take it for granted that the application did not state that benzine was used.

WAGNER, Judge, delivered the opinion of the court.

This was an action brought by the plaintiff as assignee of a policy of insurance issued by the defendant to John Cook, and dated February 9, 1866, whereby defendant insured Cook for six years against loss by fire, in the sum of twenty-five hundred dollars, upon a wagon-maker's shop and materials used in manufacturing wagons.

The policy was a mutual policy, and Cook, at the time of obtaining insurance, gave his premium note for nine hundred dollars, " payable in such portions and at such time or times as the directors of said company may, agreeably to their regulations, require."

The upper story of the building insured was used as a paint-shop, where were kept paints, oils, and other materials for painting wagons, and among the materials was about half a barrel of benzine, used in mixing paints, and which was proved to be of a very inflammable nature. The fire broke out in the paint-shop, and in that part of it where the benzine was kept. Defendant denied that it had any notice that a paint-shop was kept in the building, or that benzine was kept there, and contended that the keeping of the paint-shop and benzine in the building vitiated the policy. The eighth article of the conditions of the policy declared that the company would not be " liable for damages to property by lighting, aside from fire, nor for damage occasioned by the explosion of a steam boiler, nor for damage by fire resulting from such explosion, nor explosions caused by gunpowder, gas, or other explosive substances, nor for damages occasioned by the use of camphene, spirit gas, or burning fluid, unless otherwise expressly provided."

When the case was called for trial defendant asked leave to file an amended answer, which, in addition to the defense theretofore relied on, set up an offset or counter claim, arising out of an assessment of about $360, made by the defendant on the premium note of Cook, the assignor. The court refused to permit the amended answer to be filed, and the defendant excepted.

It was shown in evidence that a paint-shop was a common part of

a wagon-maker's shop ; that the paints were used as materials for manufacturing wagons, and were customarily kept in the building used for that purpose, and that benzine had been used for several years as a material for mixing paints. This evidence was objected to, but admitted. The court gave judgment for plaintiff for the amount of the policy, and the defendant appealed to this court.

The paints and benzine, disconnected and by themselves, would belong to the class designated extra hazardous, and therefore excluded from the terms of the policy. But as it was proved that they were materials usual and customary in the manufacture of wagons, and generally kept, in the same shop where wagons were made, the question is, were they not included and covered by its terms?

In Harper v. The Albany Mutual Insurance Company, 17 N. Y. 194, the action was upon a policy of insurance against damage by fire, issued by the defendant upon the plaintiff's printing and book materials, stock, paper, and stereotype plates, and printed books, contained in certain buildings in the city of New York, therein described, "and privileged for a printing-office, bindery, and book-store." Under the head of special rates was this provision: "Camphene, spirit gas, or burning fluid, cannot be used in the building where insurance is effected, unless permission for such use be indorsed in writing upon the policy, and is then to be charged an extra premium." The plaintiff proved a loss by fire exceeding the amount of insurance, and it appeared by the evidence on his part that the fire was occasioned by the act of a plumber engaged in making some repairs, who accidentally threw a lighted match or paper into a pan containing a small quantity of camphene, used for the purpose of cleaning rollers employed in inking the forms of type, wood-cuts, etc. It was insisted on the part of the defense that such use of camphene was prohibited by the clause in the policy respecting the use of " camphene, spirit gas, or burning fluid." But the court were unanimous in the opinion that the prohibition of camphene in that case related only to its use as a lighting material, and that upon its being shown that the use of camphene was necessary in conducting the business, an assent was implied by the insurer to its being

kept upon the premises for such use. The same rule was held in the case of the same plaintiff v. The New York Insurance Co., 22 N. Y. 441.

In the case of Pindar v. The Kings County Insurance Co., 36 N. Y. 648, Pindar procured from the defendant a policy of insurance against loss by fire upon a building for one year; also for fifteen hundred dollars on his stock, such as is usually kept in country stores, for one year. The policy contained a clause providing that if the premises, at any time during the period for which the policy would otherwise continue in force, should be used for storing or keeping therein any articles, goods, or merchandise denominated hazardous, or extra hazardous, or specially hazardous, in the second class of hazards annexed to the policy, except as therein specially provided for, the policy should be void while the premises were so used. Among the articles so specified as extra hazardous was spirits of turpentine, and among those specially hazardous, gunpowder. The premises and stock of goods were consumed by fire during the life of the policy. At the time of the fire about twenty gallons of spirits of turpentine and fifteen pounds of powder were kept upon the premises. Upon the trial the plaintiff proved that spirits of turpentine and gunpowder were articles usually kept in country stores. It was held that the policy insuring such goods as were usually kept in country stores covered all articles of merchandise coming within such description, even though articles were included generally prohibited except at special rates.

The testimony introduced in this case was plainly admissible. Among the articles insured were materials used in manufacturing wagons. To determine what articles were covered by the policy, it was necessary to ascertain the kind of articles usually used in that kind of business. This rendered the proof clearly competent. The evidence showed that a paint-shop and the materials used for mixing paint were usual and customary in establishments for the manufacturing of wagons. The shop and the materials were thus brought within the description of the policy and covered by it. With the aid of the proof given, the shop and the materials must be construed to be within the policy as much as if they had been specifically mentioned. The insurer must be presumed to

know what is generally included in a wagon-manufacturing establishment; and when the insurance was made, all the customary articles were included, and the printed conditions prohibiting them to be kept were plainly repugnant to the written clause insuring them.

There is no other question of principle involved in the case; but there is a question of practice which remains to be noticed. The court refused the defendant permission to file the amended answer setting up an offset. The defendant showed great negligence in not filing it sooner, as the defense existed a long time anterior to the time it was proposed to be made availing, and no good reason is perceived for the delay. It may be said, as a general rule, that allowing an amended pleading to be filed under the circumstances exhibited in this case is a matter resting in the sound discretion of the court; but yet, where the ends of justice will be subserved by granting the permission, it is better to allow it; and if the other party is taken by surprise, or a continuance is thereby occasioned, the court should put the defaulting party on terms. This practice conduces to substantial justice and prevents multiplicity of suits.

The assignee took the assignment with full notice of the assignor's liability. His title was wholly derivative, and he could have no greater or superior rights than the assured. (Bidwell v. St. Louis Floating Dock Insurance Co., 40 Mo. 42, and cases cited; Ang. on Fire and Life Insurance, § 222.) The assignment was made after the loss occurred, and it stood on the same footing as the assignment of a debt, or right to recover a sum of money actually due, which, like the assignment of any other chose in action, would give the assignee an equitable interest and a right to recover, subject, of course, to a set-off and all other equities.

There is no good reason why the defendant should be compelled to pay the whole amount of the policy, and then have to resort to a separate and distinct suit against Cook, the assured and assignor, who in the meantime may have become insolvent.

I think the company should have been allowed to avail itself of the defense set up in the answer, and for this reason the judgment will be reversed and the cause remanded for further proceedings in accordance with this opinion. The other judges concur.