THE TRANSATLANTIC FIRE INSURANCE COMPANY OF
HAMBURG, GERMANY *vs*. MICHAEL T. DORSEY.

*Construction of a Policy of fire Insurance, in a case where the
Loss followed an Explosion, and Loss by Explosion was
Exempted under the policy—Questions for the Jury.*

A fire insurance policy contained a clause of exemption from liability
for any loss that might be sustained from certain specified causes,
among which was, that " for any loss caused by the explosion of
gunpowder or any explosive substance ; nor by lightning, (unless
specially mentioned;) or explosions of any kind unless fire ensues,
and then for the loss or damage by fire only, which loss shall
be determined by the value of the damaged property, after the
casualty by explosion or lightning." The insured property (sul-
phuric acid) was in a house which was prostrated during a storm.
The house in falling broke the pan or acid chamber containing the
acid, and the contents were thereby wasted. In an action upon
the policy brought against the insurance company to recover the
loss, it was HELD :

1st. That if the prostration of the building and consequent breaking
of the acid chamber were produced by an explosion of any kind,
without being caused by a precedent conflagration, within the
meaning of the policy, there was no liability on the part of the
defendant.

2nd. That if any part of the loss sustained was occasioned by fire
that ensued the fall of the building, the loss thus produced would
have been covered by the policy, even though the fire had originated
in an explosion.

3rd. That where a fire has occurred, and is in progress, the effects of
which are covered by the policy, and an explosion takes place, as
an incident or result thereof,—so as to increase the loss,—the
whole damage or loss thus produced should be regarded as within
the protection of the insurance, in a case where the policy con-
tains the exemption from liability for explosion.

4th. That it is a question for the jury to determine in all such cases,
whether there has been an explosion, how and by what means

Transatlantic Fire Ins. Co. of Hamburg *vs.* Dorsey.

produced, and whether the loss sustained was directly caused by the explosion, or by an antecedent or subsequent fire, within the risk assumed by the insurers.

5th. That in the instructions to the jury, it was wrong to ignore the question of explosion as the direct cause of the loss.

By one of the prayers granted, the jury were instructed that if they found that the commodities of the plaintiff were destroyed or injured in the manner testified to by the witnesses, and "that such destruction or injury was directly caused by, *or the result of fire*, the plaintiff was entitled to recover." HELD :

That the question, whether the loss was caused by an explosion and not by fire, should have been submitted to the jury in more explicit terms than was done by this instruction as given.

By one of the prayers offered, the Court was requested to instruct the jury, that the plaintiff could not recover, if there was no actual ignition of, or action of fire upon, the sulphuric acid for the loss of which the suit was brought. HELD :

1st. That there was clearly no error in rejecting this proposition. If there was a fire, within the meaning of the risk, and the loss was occasioned thereby, it was quite immaterial that the articles covered by the policy were not actually consumed or injured by contact with the flames.

2nd. That loss by fire, within the meaning of the policy, would embrace all loss or damage of the subject of the insurance, which resulted directly from the occurrence of the fire. Therefore, though the acid was wasted by the crushing of the chamber, if the building fell as the result of a fire, within the meaning of the policy, the loss would be fairly covered by the insurance.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the two following prayers :

1. If the jury shall find that the policy given in evidence was issued by the defendant to the plaintiff, for the consideration therein expressed, and that on June 28th,

1879, the commodities of the plaintiff therein mentioned, upon the premises described in the said policy, were destroyed or injured in the manner testified to by the witnesses; and if they shall find that such destruction or injury was directly caused by, or the result of a fire, then the plaintiff is entitled to recover.

2. If the jury shall find the facts in the plaintiff's first prayer enumerated, and shall further find that there was another policy for a like amount, upon the same goods issued to the plaintiff by another insurance company, then the measure of damages to be awarded to the plaintiff, must be the one-half of the loss they shall find him to have suffered with a further allowance, in their discretion, of interest from the date of the demand and refusal to pay, if they shall find such demand and refusal, not exceeding for the whole amount, the sum of one thousand dollars.

And the defendant offered the following thirteen prayers:

1. If the jury find that the plaintiff was the owner of the premises mentioned in evidence, and that about the afternoon of June, 28th, 1879, a sudden and severe tornado, cyclone or gust of wind and storm arose and struck the said premises, and in part injured or demolished the same, and that such injury or demolition was solely caused by said tornado or gust of wind and storm, and that at the time thereof, there was sulphuric acid in the acid chamber of said premises, and that by reason of such partial injury or demolition caused as aforesaid, said sulphuric acid escaped from said chamber, and ran into the street and was lost, and that said acid so escaping and running into the street, is the same acid for the loss of which the plaintiff seeks to recover in this cause, then the plaintiff is not entitled to recover in this cause.

2. If the jury find from the evidence, that there was an acid chamber on the plaintiff's premises, containing weak

Transatlantic Fire Ins. Co. of Hamburg *vs.* Dorsey.

sulphuric acid, and that a large part of said acid escaped from said acid chamber, and flowed into the street and was lost, and that the escape and loss of said acid, resulted from the fall or collapse of said chamber; provided, the jury find such a fall or collapse was caused by a combustion of sublimed sulphur in the north part of said premises, causing therein a vacuum and a collapse of said acid chamber, then the plaintiff is not entitled to recover such loss or damage in this cause, even if the jury believe that such fall or collapse was caused by atmospheric disturbances, thereby leading or producing such fall or collapse, which atmospheric disturbances the jury may find, resulted from combustion.

3. If the jury find that the plaintiff owned the sulphuric acid chamber, mentioned in evidence, and that the same was partially or wholly filled, either with sulphuric acid or with gases and steam, necessary for the manufacture of said acid, and shall further find that said acid chamber collapsed or fell, by the rushing out of the gases therein, and that the outrush of said gases was caused by an atmospheric disturbance outside of, and north of said chamber, and shall further find, that by said fall or collapse, the sulphuric acid ran out of said chamber into the street and was lost, then the plaintiff cannot recover for such loss, even if the jury shall find that such atmospheric disturbance was caused by a combustion or explosion outside of said acid chamber of. sublimed sulphur, as stated by the witnesses in the case.

4. If the jury find from the evidence, that an explosion or ignition of explosive matter, not caused by a preceding fire, took place on plaintiff's premises, on June 28th, 1879, and no fire ensued therefrom, then the plaintiff is not entitled to recover.

5. That the plaintiff cannot recover in this cause, if there was no actual ignition or action of fire upon the sulphuric acid, whose loss is sought to be recovered in this cause.

6. If the jury find from the evidence, that an explosion or ignition of explosive matter, not caused by a preceding fire, took place on the plaintiff's premises, on the 28th day of June, 1879, or thereabout, and that the loss or damage to the sulphuric acid sought to be recovered in this cause, did not result from, and was not caused by fire happening after such explosion or ignition of explosive matter, then the plaintiff is not entitled to recover.

7. If the jury find, that an explosion or a mere ignition of explosive matter, not caused by a preceding fire, took place on the plaintiff's premises, on the 28th day of June, 1879, and that the loss and damage to the weak sulphuric acid, to recover which this suit is brought, was caused solely by said explosion or ignition of explosive matter, then the plaintiff is not entitled to recover.

8. If the jury find, that an explosion, or a mere ignition of explosive matter, not caused by a preceding fire, took place on the plaintiff's premises, on June 28th, 1879, and shall further find that such explosion or ignition of explosive matter was caused or took place from the fire or flames being thrown out of the sulphur burners or the furnace of the boiler, and coming in contact with minute particles of explosive matter—sulphur floating in the air, then such fire or flame so producing such explosion or ignition was not such as was contemplated by the parties to this cause, under the policy offered in evidence as one of the perils insured against, 'and the plaintiff cannot recover.

9. If the jury find from the evidence, that an explosion or ignition of explosive matter, not caused by a preceding fire, took place on the 28th day of June, 1879, and that loss and damage resulted to him by reason of such explosion or such ignition of explosive matter, then the plaintiff cannot recover in this cause for any such loss or damage.

10. If the jury find from the evidence in the cause, that the loss or damage sought to be recovered in this

cause, resulted from the sulphuric acid escaping from the acid chamber, and flowing into the street, after said chamber had been injured, thrown down, either by an explosion or ignition of explosive matter, and by such injury causing said escape of acid, provided they find all these facts, then the plaintiff cannot recover.

11. If the jury shall find from the evidence in the cause, the plaintiff owned the sulphuric acid chamber spoken of in evidence, and that he owned sulphuric acid contained therein, and that said building fell, and shall further find, that said fall was not the result of fire, but resulted from a tornado or gust of wind, then the plaintiff cannot recover.

12. If the jury shall find from the evidence in the case, that the plaintiff owned the acid chamber mentioned in evidence, and had sulphuric acid therein, and that said building fell, and that said fall was the result solely of atmospheric disturbances, and that said disturbances resulted from a combustion on said premises, and not of fire directly, then the plaintiff cannot recover.

13. If the jury find from the evidence the following facts: That on June 28th, 1879, the plaintiff was the owner of the premises on Eastern avenue and Clinton street, mentioned in evidence, and that said premises, in part, consisted of an acid chamber, then having sulphuric acid in it, and also of a brick sulphur burner, in three compartments, a closed brick sulphur stack, and that the burned sulphur and nitre of soda passed through said stack, into said acid chamber, as stated in evidence, and further, in part, consisted of an upright tubular boiler, with smoke-drum and stack, as stated in evidence, and, at said time there was fire in the furnace, under said boiler, and also burning sulphur in two of said sulphur compartments; and shall further find that there were minute particles of sulphur, in the air of said premises, and that, by some cause, the fire or flame, from the said

boiler or furnaces, or from both, shot out in the air of said premises, and caused a fire and explosion of said minute sulphur in the air as aforesaid, and save this fire there was then none other on the premises, save in said furnace boiler and sulphur furnaces as aforesaid; and that said explosion caused the acid chamber to fall down or collapse, and that by reason of such fall or collapse, the sulphur acid in said chamber ran out, and was lost, and that no fire except what is above mentioned, happened or resulted to said premises, or said sulphuric acid, after such explosion, and that no loss or damage was done to said sulphuric acid, directly by fire after such explosion, except by fire as aforesaid; and if the jury shall find that the fire in the furnace aforesaid, was blown out in the air as aforesaid, and meeting with such particles caused such explosion, that then no loss, consequent on such explosion, is a loss by fire within the meaning of the policy, and the plaintiff cannot recover.

The Court (GILMOR, J.,) granted the plaintiff's prayers, and the defendant's first and eleventh prayers; and rejected all the other prayers of the defendant. The defendant excepted, and the verdict and judgment being rendered against it, appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, ROBINSON and IRVING, J.

*John Carson,* for the appellant.

*Charles J. Bonaparte,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

This was an action on a policy of insurance against loss by fire, issued by the appellants to the appellee, and which policy covered the appellee's stock in trade, consisting of sulphuric acid, and sulphur in bulk and in process

of manufacture, contained in a certain building described in the policy. The policy contains a clause of exemption, declaring that the appellants shall not be liable for any loss that might be sustained from certain specified causes, among which is that "for any loss caused by the explosion of gunpowder or any explosive substance; nor by lightning, (unless specially mentioned;) or *explosions of any kind,* unless fire ensues, and then for the loss or damage *by fire only,* which loss shall be determined by the value of the damaged property after the casualty by explosion or lightning."

The claim for loss states, "that the fire originated in consequence of a violent tornado, blowing the fire through the steam drum, and so bringing it in contact with escaping gases and air, causing, by the fire, *an explosion.*"

The proof shows that there was a severe storm raging at the time, and that the building was prostrated suddenly, and the fall was immediately preceded by a considerable report; but the witnesses were not agreed as to whether any portion of the building had been subject to the action of fire, except a few boards that fell against an adjoining lime kiln, from which, some of the witnesses supposed, they took fire. The loss for which claim is made is for sulphuric acid wasted from the pan or acid chamber, which was broken, as it is supposed, in the fall of the building. The loss therefore, for which claim is made, is not for what was actually burned, but for loss occasioned as the consequence of a fire, alleged to have been insured against by the appellants.

There was considerable diversity of opinion among the witnesses as to the true cause of the loss; whether it was to be attributed to actual combustion of material outside of the furnace or burners; to explosion of some explosive substance; or to the prostration of the building by the storm, without the agency of fire.

If the loss was occasioned by fire, as contended by the appellee, there is no pretence that the fire originated anywhere beyond the establishment containing the articles covered by the insurance. The theory of the appellee is, as maintained by a scientific expert examined upon the subject, that the damage to the property insured was the immediate result of the violent and instantaneous conflagration of sublimed sulphur diffused through the atmosphere immediately surrounding the boiler and sulphur burners; and that such conflagration was caused by flames blown out from the fire in the furnace or burners, by the storm then raging, and brought in contact with the diffused particles of sulphur: That while this rapid combustion could not be accurately termed an explosion, sublimed sulphur not being an explosive substance, it would have some of the incidents of an explosion; among these, a report and concussion in the air, as described by some of the appellee's witnesses: That this sudden combustion produced a vacuum, which was followed by a collapse, and the fall of the building, breaking the acid chamber, and causing the waste of the contents.

On the other hand, the appellants gave proof tending to show that the building was suddenly prostrated by the violence of the storm, without the agency of fire, and that all the loss sustained was attributable to the fall of the building. And further, that, from the appearance and condition of the ruins, if combustion was in fact the moving cause of the fall of the building, it must have been by explosion, and not by producing a collapse, as maintained on the part of the appellee.

The Court below instructed the jury, that if they found that the loss sustained was of the subject-matter insured, and "that such destruction or injury was directly caused by, or the result of, fire," then the appellee was entitled to recover. The jury found for the appellee, and therefore, as we must assume, they found that the loss was

directly caused by, *or was the result of*, fire. And the question is, whether this instruction was correct, in view of all the evidence in the case.

It is certainly true as a rule of construction, that where an insurance company attempts to limit or restrict the general operation of its contract of insurance, by special exceptions or exemptions, it is bound to do so by clear and explicit terms; and if it fail in this, it cannot complain that the party insured is given the benefit of any doubt that may be reasonably raised as to the nature or extent of the exception from the general risk assumed. Where, however, the terms of the contract are clear and explicit, they must be allowed their full force and effect; there being no distinction in this respect between the contract of insurance and any other contract.

In this case, the exception of liability for explosions of any kind, is certainly very broad and comprehensive; but that exception must not be so construed as to defeat the main and principal object of the insurance.

If the prostration of the building and the consequent breaking of the acid chamber were produced by an explosion of any kind, without being caused by a precedent conflagration within the meaning of the policy, then there is clearly no liability on the part of the appellants. In other words, the loss occasioned by explosion alone would not be covered by the risk assumed by the insurers. It is not pretended that any part of the loss sustained was occasioned by fire that ensued the fall of the building. If such had been the case, the loss thus produced would have been covered by the policy, even though the fire had originated in an explosion, and this by the terms of the exception. But where a fire has occurred, and is in progress, the effects of which are covered by the policy, and an explosion takes place as an incident or result thereof,— so as to increase the loss,—whether the whole of the damage or loss thus produced can be regarded as within the

protection of the insurance, in a case where the policy contains the exemption from liability for explosions, has been the subject of some diversity of judicial opinion. We think, however, both upon reason and the established rules of construction, that such loss should be regarded as within the risk assumed by the insurers. In such case, the fire is the direct and efficient cause of the loss, and the explosion but the incident, and if the insurers intend to exclude such liability, they must do so by plain and unambiguous terms. Indeed, the difficulty, in such case, of ascertaining and distinguishing the loss to be attributed to the fire from that caused by the explosion,—separating the actual or probable effects of the explosion from those produced, or that would have been produced, but for the explosion, by fire alone,—at once furnishes strong reason for including the effects of explosion in the loss occasioned by the precedent fire, producing the explosion. The contrary construction would do much to impair the security that should be afforded by policies containing the clause in question; and especially would this be so, if what was said in the case of *Stanley vs. The West. Ins. Co.,* L. R., 3 *Exch.,* 71, were adopted; that is to say, that the onus in such case would be upon the insured to show the exact extent of the loss by fire as distinguished from that produced by the explosion; and his failure to do that would result in his misfortune rather than that of the insurers.

The case of *Briggs vs. The Ins. Co.,* 53 *N. Y.,* 446, presents some features analogous to those of the present case. There the policy was upon certain machinery used for rectifying spirits. It contained a clause exempting the company from liability for losses " caused by lightning, or explosions of any kind, unless fire ensued, and then for the loss or damage by fire only." Vapors escaped from the works and came in contact with the flame of a lighted lamp in the room, and an explosion ensued which nearly

destroyed the entire building and machinery. A fire resulted which occasioned some damage, but small in comparison with that caused by the explosion. The Court of Appeals of New York, held, that the contact of the vapor in the room with the burning lamp was not a fire within the meaning of the risk assumed, and while it was held that the company was liable for the damage done by the fire which followed the explosion, it was held not to be liable for the loss occasioned by the explosion itself. It was suggested, however, that if the building had been on fire, and in the course of the conflagration an explosion had occurred, the company might have been liable.

So, in the case of the *Ins. Co. vs. Foote*, 22 *Ohio St.*, 340, the policy contained an exception of liability for "any loss or damage occasioned by or resulting from any explosion whatever." The insurance was upon a stock of liquors in a liquor store, with privilege of rectifying and manufacturing fine spirits by steam not generated in the building. The fire, by which the building and stock of merchandise were consumed, was occasioned by, and resulted from, an explosion of vapor, arising from the process of rectifying whiskey, mixed with the atmosphere of the still room, and which explosion was caused by this mixture coming in contact with a burning gas-jet in the room. It was there held that the fire thus originating was within the exception, and the company, consequently, was not liable ; it not being provided, as in the present case, that the insurer should be liable for all loss by fire ensuing the explosion.

There is often difficulty experienced, in these cases, in accurately defining the term *explosion*. As was ·said in the case of *Ins. Co. vs. Foote*, just referred to, we all understand that the term is not used as a synonym of combustion. It has at least some distinctive characteristics. An explosion, produced by ignition, according to common understanding, may be accurately enough de-

scribed, for practical purposes, as a sudden and rapid combustion, causing a violent expansion of the air, and producing a report more or less loud, according to the resistance offered. That it greatly varies in its degrees of violence, and the effects produced, are facts fully within the experience of every one. We must suppose that the term was employed in the policy in its ordinary and popular meaning; and it is a question for the jury to determine, in all such cases, whether there has been an explosion, how and by what means produced, and whether the loss sustained was directly caused by the explosion, or by an antecedent or subsequent fire, within the risk assumed by the insurers.

Here, the question of explosion as the direct cause of the loss, was entirely ignored by the first of the appellee's prayers, which was granted by the Court. The jury were instructed, that if they found that the commodities of the appellee were destroyed or injured in the manner testified to by the witnesses; and " that such destruction or injury was directly caused by, *or the result of fire,* the plaintiff was entitled to recover." By the terms of this instruction, if the fire had originated simultaneously with an explosion and terminated therewith, or had been communicated to some explosive substance coming in contact with the fire in the furnace or the sulphur burners, without producing any other effect than that produced by the explosion itself, the injury would have been caused, if not directly by, certainly as the result of fire; and the jury likely so understood the instruction. A lighted match coming in contact with a keg of powder would certainly produce an explosion, and as the explosion would be produced by fire, all the injury caused thereby might well be said to be directly caused by fire, or be the result thereof; and yet the burning match could no more be said to be the fire insured against, than the burning lamp or gas-jet in the cases to which we have referred.

We think, therefore, that the first prayer of the appellee should not have been granted in the form in which it was presented. The question whether the loss was caused by an explosion, and not by fire, according to the distinction we have stated, should have been submitted to the jury in more explicit terms than was done by the instruction as given. The second instruction given at the instance of the appellee is free from objection; and the first instruction, modified as we have indicated, together with the second prayer of the appellee, and the first prayer on the part of the appellants, which was granted, will place the case fully and fairly before the jury.

The appellants offered a number of prayers which were rejected by the Court below, and, upon careful examination of them, we think there was no error committed in their refusal. By the fifth of these prayers, the Court was requested to instruct the jury that the appellee could not recover, if there was no actual ignition of, or action of fire upon, the sulphuric acid, for the loss of which the suit was brought. There was clearly no error in rejecting this proposition. If there was a fire within the meaning of the risk, and the loss was occasioned thereby, it is quite immaterial that the articles covered by the policy were not actually consumed or injured by contact with the flames. Loss by fire, within the meaning of the policy, will embrace all loss or damage of the subject of the insurance, which resulted directly from the occurrence of the fire. Therefore, though the acid was wasted by the crushing of the chamber, if the building fell as the result of a fire within the meaning of the policy, the loss would be fairly covered by the insurance.

Without referring more particularly to the rejected prayers, we shall reverse the judgment, and direct a new trial.

*Judgment reversed, and*
*new trial ordered.*

(Decided 17th March, 1881.)

ROBINSON, J., filed the following dissenting opinion :

In my opinion, the plaintiff's first prayer submitted the law of this case fairly to the jury, and I am obliged therefore to enter my dissent.