RENSHAW v. THE MISSOURI STATE MUTUAL FIRE AND MARINE INSURANCE COMPANY, *Appellant.*

DIVISION TWO.

1. **Insurance:** LOSS BY FIRE : CONSTRUCTION OF CONTRACT. A policy of insurance which, without qualification, indemnifies " against loss or damage by fire," is broad enough to include all fires, however originating and all damages therefrom of whatever character.

2. ———— : ———— : PRACTICE : EVIDENCE. Where, in an action on a policy of insurance against fire, it appeared that an explosion occurred at night in a retail store in which gasoline, coal-oil and matches were kept for sale, there having been a fire in a stove in the room on the day before and it having been the custom to leave a

Renshaw v. The Mo. State Mut. F. & M. Ins. Co.

gas jet burning at night, though it did not appear that there was either fire in the stove or gas lighted on the night in question, and the timbers of the building were on fire when they fell immediately after the explosion, and one person saw a bright light in the store different from a gaslight and another heard the cry of "fire," just previous to the explosion, and others who had passed before the explosion saw no light, there was abundant evidence to justify submitting to the jury the question of whether there was a fire in the building antecedent to the explosion.

3. ———: ———: ———: ———. In an action on a policy of fire insurance where the evidence fails to disclose the use to which the building destroyed was put, but questions were asked by defendant's counsel upon the assumption that it was used as a retail grocery store at the time of the fire, and that gasoline and coal-oil were kept for sale therein and the rulings of the court thereon were based upon the correctness of that assumption, it will be taken as conceded by defendant that the building was used for that purpose.

4. ———: CONSTRUCTION OF CONTRACT. A contract of insurance should be construed by the same rules that govern the interpretation of other contracts, the object being to ascertain the meaning and intention of the parties, which must be gathered from the whole instrument, in the light of the surrounding circumstances' in contemplation of which they are supposed to contract.    .

5. ———: UNFINISHED BUILDING. Where an unfinished building, evidently designed to be used as a store in the lower story and as a residence above was insured and the policy permitted the completion of it, it will be inferred that the company knew, at the time it issued the policy, that the building might be used as a retail grocery store and residence and that the store would be supplied with the articles of merchandise usually kept in the business.

6. ———: HAZARDOUS USE OF BUILDING. Under a policy of insurance prohibiting the use of the insured building for carrying on a business that was hazardous or extra hazardous or for storing articles therein that were so denominated, no schedule of what should be denominated a hazardous business or article being attached to the policy, the insured had the right to understand that he was at liberty to keep in stock and sell as a retail grocer gasoline and coal-oil, and that for so doing the policy would not be avoided, unless it was shown that it was not customary to so keep and sell them, and the burden would be on the company to show that such was not the custom.

7. ———: ———. A policy of insurance prohibiting the storage of hazardous articles in the building insured does not prohibit keeping them therein for sale.

8. ——— : CONDITIONS OF POLICY. Where a contract of insurance provided for indemnity against loss by fire, without making any exception, loss from an explosion will be covered by the policy, whether it was caused from an accidental fire gradually communicated to oil or gasoline, or whether it resulted from an innocent gas jet coming in contact with inflammable gas mixed with atmospheric air which had escaped and filled the room.

9. ——— : ———. An insurance company makes its own conditions, and they will be interpreted most strongly against it.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*Rowell & Ferriss* and *Joseph H. Zumbalen* for appellant.

(1) The court erred in refusing to instruct that the plaintiff had failed to make out a *prima facie* case of loss by fire. 2 Wood on Fire Ins., p. 1206 ; 2 Greenl. on Ev., sec. 405. (2) If from any cause, outside of the peril insured against, a building falls in pieces, or so much so that it ceases to be a building, and afterwards a fire breaks out and destroys the materials, the loss is not one under the policy. 1 Wood on Fire Ins. [2 Ed.] p. 193 ; *Nave v. Ins. Co.*, 37 Mo. 430. (3) The terms of the policy must be construed in their plain, ordinary and popular sense, and an explosion by combustion of an explosive substance is not a fire insured against within the meaning of a policy against loss or damage by fire ; neither is a burning gas jet or a stove fire, by contact with which the explosive matter is ignited, such a fire. *Ins. Co. v. Foote*, 22 Ohio St. 348 ; *Ins. Co. v. Dorsey*, 56 Md. 70 ; *Briggs v. Ins. Co.*, 53 N. Y. 446 ; *Washburn v. Ins. Co.*, 9 Ins. Law Journal, 68 ; *Everet v. Ins. Co.*, 19 C. B. (N. S.) 126 ; *St. John v. Ins. Co.*, 11 N. Y. 516 ; *Millaudon v. Ins. Co.*, 4 La. Ann. 15. (4) The condition avoiding the policy if the premises insured are used or appropriated to the carrying

on or exercising of any trade, business or vocation denominated hazardous or extra hazardous, or for storing therein any such articles, is broken by keeping for sale in a retail grocery gasoline, which is denominated extra hazardous. *Mead v. Ins. Co.*, 7 N. Y. 530 ; *Pindar v. Ins. Co.*, 38 N. Y. 364 ; s. c., 47 N. Y. 116 ; *Wetherell v. Ins. Co.*, 16 Gray (Mass.) 276 ; *Macomber v. Ins. Co.*, 7 Gray (Mass.) 257 ; *Whitmarsh v. Ins. Co.*, 2 Allen (Mass.) 581 ; *Steinbach v. Ins. Co.*, 13 Wallace, 183 ; *Richards v. Ins. Co.*, 30 Me. 273. (5) Under a policy which provides that the insurance shall cease if the risk shall be increased by any means whatsoever, or if the building insured shall be occupied in any way so as to render the risk more hazardous than at the time of insuring, the question whether the risk has been increased is one of fact for the jury to determine, and it is error to refuse to submit it to the jury. *Boatwright v. Ins. Co.*, 1 Strobhart (S. C.) 231 ; *Dittmer v. Ins. Co.*, 23 La. Ann. 458 ; *Williams v. Ins. Co.*, 57 'N. Y. 277 ; *Jones v. Ins. Co.*, 51 N. Y. 318 ; *Ins. Co. v. Rogers*, 12 Wis. 337 ; *Ins. Co. v. Stewart*, 19 Pa. St. 45 ; *Richards v. Ins. Co.*, 30 Me. 273 ; *Fire Ass'n v. Williamson*, 26 Pa. St. 196 ; *Howell v. Eq. Society*, 16 Md. 377 ; May on Ins. [2 Ed.] sec. 227.

*Chester H. Krum* for respondent.

(1) Indemnity for loss by fire covers a situation of damage, where the effects produced are the immediate result of the contact of a burning substance with a building. It is not material, in such event, whether the results, which evidence the damage, manifest themselves in the shape of an explosion, or of combustion, or both combined—the consequent loss is a loss by fire. *Scripture v. Ins. Co.*, 10 Cush. 356–362 ; *Ins. Co. v. Corlies*, 21 Wend. 367–371 ; *Ins. Co. v. Lawrence*, 01 Peters, 507 ; *Ins. Co. v. Robinson*, 64 Ill. 265 ; *Renshaw v. Ins. Co.*, 33 Mo. App. 394 ; *Washburn v. Ins. Co.*,

9 Ins. Law Jour. 761; *Washburn v. Ins. Co.*, 9 Ins. Law
Jour. 68; *Washburn v. Ins. Co.*, 9 Ins. Law Jour. 425;
*Briggs v. Ins. Co.*, 53 N. Y. 446; *St. John v. Ins. Co.*,
1 Kernan, 516-519; *Ins. Co. v. Foote*, 22 Ohio St. 340-353.
(2) The facts, developed and sought to be developed,
did not fit the defense set up in the answer. The appli-
cation for leave to amend was properly denied. Sit-
uation of appellant, therefore, hopeless on this appeal.
*First.* Whether the amendment should be allowed
discretionary with trial court. *Ensworth v. Barton*, 67
Mo. 622; *Henderson v. Henderson*, 55 Mo. 534. *Second.*
Condition of insurance as relied on in answer not broken
by evidence, that, as part of stock of retail grocery
store, a small quantity of gasoline was carried in the
building. *Ins. Co. v. Langdon*, 6 Wend. 628; *Ins. Co.
v. Taylor*, 5 Minn. 492; *Ins. Co. v. McLaughlin*, 52
Penn. St. 485; *Leggett v. Ins. Co.*, 10 Rich. Law
(S. C.) 202; *O'Neill v. Ins. Co.*, 3 Comst. 122; *Moore
v. Ins. Co.*, 29 Me. 97; *Buchanan v. Ins. Co.*, 61 N. Y.
26; *Dobson v. Sotheby*, 1 Mood. & Malk. 90. *Third.*
Instructions, based upon this defense, therefore, prop-
erly refused. Cases cited, *supra*. *Fourth.* Sole issue
to be tried by jury, whether building fell and then
caught fire, or whether it caught fire and was then
thrown down by an explosion resulting from such fire.
Question one of fact. Adverse determination having
been had against appellant, the appeal is without merit
and judgment should be affirmed, with ten-per-cent.
damages for vexatious delay.

MACFARLANE, J.—This was an action on a policy
of insurance, as follows: "Missouri State Mutual Fire
and Marine Insurance Company, of St. Louis, by this
policy of insurance, in consideration of $37.50, do
insure William Renshaw and legal representatives in
the sum of $5,000, from August 17, 1887, to August 17,
1892, at twelve o'clock, noon, against loss or damage by
fire on four brick buildings, $1,250 on each, situated in

St. Louis, on the west side of Fourteenth street, between Market street and Clark avenue, block number 209 E., house numbers 7, 9, 11 and 13. Privilege given to finish. 1887, September 17, other insurance permitted."

To this policy was attached the following conditions : "If the risk shall be increased by any means whatsoever, or if such building or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring," the policy should be void.

"And it is agreed and declared, that in case the premises or property hereby insured shall, at any time after making, or during the continuance of this policy, be appropriated, applied or used to or for the purpose of carrying on or exercising any trade, business or vocation denominated hazardous or extra hazardous, or for the purpose of storing therein any of the articles denominated hazardous or extra hazardous, unless provided for specially herein, or hereafter agreed to in writing by this corporation, this policy shall then and thenceforth cease and be of no force or effect.

"Every policy of insurance issued by this company becomes void if more than twenty-five pounds of gunpowder are kept in an insured building or on the premises where such insured property is contained." None of the other conditions have any bearing on the question in issue in the case.

Defendant's answer admitted the execution and delivery of the policy, and set up, by way of affirmative defense, a breach of the conditions of the policy, as follows : "Defendant avers and charges that said premises were used for the purposes of carrying on a business hazardous and extra hazardous, to-wit, storing and selling therein of merchandise denominated gasoline, which is a dangerous and inflammable fluid and greatly increases the risk of said insurance, and for this reason said policy became void and of no effect before the date of said alleged loss ; that one of the conditions of said

contract of insurance was that if the situation or circumstances affecting the risk should be altered or changed so as to increase the risk, thereupon said policy should cease and determine, and defendant avers that the use of said inflammable fluid as aforesaid did increase the risk of said insurance and render said policy null and void."

It appeared from the evidence that these buildings were erected in the summer of 1887, and at the date of the policy were unfinished and unoccupied. The first floor of the houses was planned for occupation as retail business rooms, and the upper stories for lodging rooms and families. One of the houses was occupied by a Mr. Newman from about the first of October. He used the ground floor for a retail grocery store, and he, with his family, resided above. He kept gasoline in a galvanized iron tank in the store and coal-oil in a similar tank and also in a barrel. These articles were used in his retail trade. About two o'clock in the night of November 1, 1887, there was a terrific explosion in this storeroom, which demolished the building and killed Mr. Newman and several members of his family, who were sleeping above. At the time of the explosion there were about forty gallons of gasoline in the tank. It was shown that it was customary to keep one gas jet burning in the store during the night and that there had been fire in the stove during the preceding day. Whether there was fire in the stove or a gas jet burning at the time of the explosion, did not satisfactorily appear. The other facts will sufficiently appear in the opinion.

I. The first contention by appellant is, that there was no evidence on the trial that justified a submission to the jury of the question, whether a loss occurred, which was covered by the terms of the contract. The policy, by its express terms, insured the plaintiff against loss or damage to his buildings by fire. The contract is

broad enough to include all fires, however originating, and all damages therefrom of whatever character.

The evidence shows the building was closed about ten o'clock on the night of its destruction ; that it had been the custom of the proprietor to leave one gas jet burning during the night. The evidence did not disclose whether a light had been left burning on the night of this loss. A fire had been kept in a stove in the storeroom during the day preceding the disaster, but there was no evidence that it had been continued during the night. Gasoline, coal-oil and matches were kept in the building.

A short time previous to the explosion, a witness testified that he passed on the opposite side of the street and observed, through the window, a light, which he described as a "rather glowing blaze, different from a gaslight. It was quite a bright light, enough to attract my attention." Other witnesses, who passed previous to the explosion, testified that they observed no light in the building. One witness testified, that she heard a cry of "fire" just a moment before the explosion. When the explosion occurred, a blaze of fire was thrown up into the air, and timbers from the building were on fire immediately after it fell.

We are of the opinion there was abundant evidence, not only to authorize the submission to the jury, but to justify the verdict, that there was a fire in progress antecedent to the explosion. If there was such a blaze in the building as the one described by the witness, then no explanation of its existence there can be given on any other hypothesis than that a fire was at the time in progress. The fact, that other witnesses had passed the premises a short time before without observing any light, gives strength to this theory. The evidence of this witness alone, uncontradicted as it is, authorized a submission of the question to the jury.

II. During the trial, defendant called a witness who testified that he had been engaged as an insurance

adjuster in St. Louis for twenty-two years, and was familiar with the insurance business in that city. This witness was asked in what class the article, known as gasoline, was placed by insurance men in the city of St. Louis. This question was objected to by counsel for plaintiff, who stated that there was no controversy that it was kept there as a part of a retail stock of groceries, and not otherwise stored. The court then stated: "I think if it is conceded that Mr. Newman kept a retail grocery store, and only kept coal-oil and gasoline there as part of his retail grocery stock, that does not come within the provision of the policy which would avoid the policy. I do not think it applies to either of them. The objection will be sustained."

After other questions had been asked this witness, as to whether gasoline was designated by insurance companies as hazardous or extra hazardous; whether keeping it in an ordinary grocery store would be regarded as hazardous; whether higher rates of insurance were required on a stock of groceries, in an ordinary grocery store, on account of keeping gasoline as a part of the stock, all of which were excluded by the court; defendant's counsel stated: "I offer testimony tending to show that the keeping of gasoline on these premises that were destroyed and sued for did increase the risk over what the risk was when the policy was issued."

The court: "I think I indicated a little while ago, when I said if it was conceded that the tenant kept an ordinary retail grocery store, and as a part of his stock in trade kept gasoline and coal-oil for sale, that that fact did not increase the risk or avoid the policy that is here sued on."

This proceeding is stated thus fully for the reason, that the evidence wholly fails to disclose the character of Newman's business and the purposes for which gasoline was kept in the house. From these statements, made by counsel and the court, it will be taken as

conceded that Newman kept a retail grocery store in the building, and kept therein gasoline and coal-oil to supply his retail trade.

A contract of insurance differs in no respect from other contracts, as to the rules for their interpretation. The object is, as in all contracts, to ascertain the meaning and intention of the parties, to be gathered from the whole instrument, in the light of the surrounding circumstances, in contemplation of which they are supposed to contract. Words should be given their ordinary signification in view of the subject of the contract. The contract of insurance was made before the building was completed, and permission was given, in the policy, to complete it. The building was evidently designed for carrying on a mercantile business in the lower story, and to be used as a residence above. From these facts it will be inferred that, when the company issued the policy, it knew the building might be occupied and used in the manner Newman was using it, as a retail grocery store and residence; and that the store would be supplied with the articles of merchandise usually kept in the business.

Defendant contends that keeping gasoline in the store, for the purpose of selling to his customers, at retail, avoided the contract, under the expressed condition, that the policy should be void in case the premises insured should thereafter be used for carrying on a business denominated hazardous or extra hazardous; or for the purpose of storing therein any articles denominated hazardous or extra hazardous. The evidence offered was intended to prove that gasoline was an article denominated hazardous, and keeping it for such sale made the business in which he was engaged a hazardous business. From the common use of gasoline and coal-oil, for heat and light in families, they may be considered as common articles of merchandise, and that they are usually kept for sale in the retail stores. No schedule of what should be denominated a hazardous

business or a hazardous article was attached to or included in the policy. Under the circumstances, the insured had the right to understand that he was at liberty to keep in stock, and sell at retail, these articles, and for doing so the policy would not be avoided, unless it should be shown that it was not customary to so keep them, or that plaintiff knew that they were prohibited under the terms of the policy. The burden was on defendant to prove these facts. There was no evidence tending to prove either the one or the other, nor, when defendant made the offer to prove the hazardous character of these articles, did he propose or offer to follow that proof by evidence of the custom of the business.

We think, also, that there is an intended distinction between storing an article and keeping it for sale. The meaning of the word "store" itself sufficiently indicates the distinction. Webster gives this definition to the word when used in this connection : "to deposit in a storehouse or other building for preservation." Defendant made no offer to show that it had any technical meaning in the insurance business. When it is intended to prohibit the keeping for sale any articles, the word "keep" is usually, if not uniformly, connected with the word store, making the condition of the policy, read "keep or store." The word "keep" having been omitted from this policy, it must have been the intention of the parties to permit the keeping for sale such hazardous articles as are ordinarily kept in such a business.

Our conclusion is, that a contract of insurance upon a building, made before its completion, authorized the use of the building in any common business, to which its construction is adapted, and, when the contract prohibits storing hazardous articles, it does not prohibit keeping them for sale in such business. *Archer v. Ins. Co.*, 43 Mo. 434 ; 1 Wood on Fire Ins. 170 ; *Hall v. Ins. Co.*, 58 N. Y. 292 ; *Ins. Co. v. DeGraff*, 12 Mich. 124 ;

*Ins. Co. v. McLaughlin*, 53 Pa. St. 485; *Veile v. Ins. Co.*, 26 Iowa, 9; *Sims v. Ins. Co.*, 47 Mo. 63.

III. It is not seriously contended by counsel for defendant that if a fire was in progress before the explosion occurred, and the explosion was the result of the antecedent fire, the loss was not covered by the terms of the policy, though the principal part of the damage resulted from the explosion itself, and not from the fire. Indeed, most of the authorities cited by appellant concede, that in such case the loss should be regarded as within the risk assumed by the insurer; though, in those cases, loss or damage from explosions was expressly excepted. *Ins. Co. v. Foote*, 22 Ohio St. 348; *Ins. Co. v. Dorsey*, 56 Md. 70; *Briggs v. Ins. Co.*, 53 N. Y. 446; *Renshaw v. Ins. Co.*, 33 Mo. App. 396.

It being well settled that the loss in this case would be covered by the broad and unconditional terms of the policy, if the explosion was the result of a pre-existing fire, the question is, whether or not the jury was properly instructed on that theory. If the issues were submitted under proper instructions, the verdict will be conclusive. The explosion and destruction of the property are not disputed. The question of fact for the jury was, did a wrongful fire precede and cause the explosion? The court gave the jury the following instruction :

"In determining whether the buildings insured were damaged or destroyed by fire, the jury may find that they were so damaged or destroyed by fire if they believe from the evidence that a fire of some description upon some part of the premises insured was the original cause of the loss, although they may also find from the evidence that such fire was followed by an explosion which was itself the direct result of the fire and which brought about the fall of the buildings—in other words, if the jury believe from the evidence that the fall of the buildings was the direct result of some burning substance in contact with some part of the building, it is

immaterial whether such result manifested itself in the form of combustion or of explosion, or of both combined. In either case the damage which ensued was by the action of the fire, and is covered by the terms of the policy sued on in this action."

The defendant asked eight instructions, covering, in different language, substantially the converse of the proposition contained in the instruction given. These were all refused. One of the instructions was as follows:

" The court instructs the jury that if they find, and believe from the evidence, that the buildings in question were thrown down by reason of some explosive substance being ignited by any means other than the buildings, or some one of them, or their contents being on fire, then the plaintiff is not entitled to recover anything in this action for the damages resulting from said buildings' being thrown down."

The instruction given is without fault and fairly presented the case to the jury, upon the theory that a pre-existing unlawful fire caused the explosion. Defendant had the right to have the converse of the proposition submitted to the jury under an appropriate instruction, and the one asked should have been given unless the loss was covered by the terms of the policy, though it was the result of an innocent fire coming in contact with inflammable gas or vapor. This necessitates the consideration of the question whether, in case the indemnity is against loss or damage by fire, without making any exception, a damage from explosion will be covered by the policy, though it was the result of an innocent fire coming in contact with inflammable gas or vapor.

The damage or loss for which, under this policy, the defendant makes itself liable, is that resulting from fires. The policy undertakes to make no exception to any manner in which the fire may originate, nor to the manner in which the loss or damage may be accomplished. If fire was the direct and proximate cause of the damage, the responsibility therefor becomes fixed. It would

make no difference whether it manifested itself in combustion or explosion.   The contention is, that a burning gas jet or a fire in a stove is not such a fire as was contemplated by the parties when the contract was made. That is undoubtedly true, but an innocent fire communicated to combustible materials will produce a negligent fire such as was in contemplation of the parties to the contract.   The fire contracted against was such as would, in its natural course, cause loss or damage.

A fire resulting from the explosion of a lighted coal-oil lamp, or from the ignition of paper, cotton or other easily ignited substance left too near a heated stove or grate, which resulted in communicating fire to the insured property would certainly be covered by the terms of the policy.   It could make no difference how innocent the original fire, whether used to light or heat a room, or to run machinery ; if, communicated to the property insured, the loss would be by fire.   It is seldom conflagrations originate from other causes than that of an innocent and lawful fire.   It is impossible to draw a distinction between a fire, communicated from a gas jet, a lamp or a stove to tangible combustibles and one communicated by the same agencies to intangible inflammable vapor or gas.  The explosion of a coal-oil lamp, caused by the generation of gas, may not in a moment communicate the fire to the entire building, but it may result in as complete destruction as the ignition of gas, which permeates every part of the building and destroys the whole by an instantaneous blaze.

Powder may be ignited either in quantities only sufficient to communicate fire to combustible materials around it, or sufficient to demolish the largest buildings. There would only be a difference in degree between the one and the other.   No reason can be seen why an exception to an indemnity against loss by fire should be made because the work of destruction is instantaneous and by explosion rather than when through the slow process of gradual communication and combustion.   The

defendant had it within its power to fix its own contract and its terms and conditions, or not accept the risk. It has done so by making itself responsible for loss for all fires, however started, and however rapid the demolition. It did not indemnify against fires occurring only in particular ways, but against fires generally, regardless of the manner of either their commencement or progress.

We are of the opinion that the loss was covered by the policy, whether the fire was started from a box of matches and was gradually communicated to the oil or gasoline, or whether communicated directly from the innocent gas jet to the inflammable gas mixed with atmosphere which had escaped and filled the room. This construction is according to the plain terms of the contract. The conclusion reached is strengthened by the fact that no exception was made in the policy to damages caused by explosions. It is well known that policies of insurance usually contain such an exception, and it is fair and reasonable to assume that a company engaged in this business should know that such was the common custom. If defendant intended to relieve itself from such losses it could easily have done so by the usual exception.

We think our conclusion well sustained by authority. The leading case on the subject is *Scripture v. Ins. Co.*, 10 Cush. 357. In that case a burning match was applied to a cask of powder in the attic of the house, which caused an explosion of the powder, setting fire to the bed and clothing, injuring the walls and the furniture and blowing off the roof of the house. Held that the whole damage was covered by a policy insuring against loss or damage by fire. In case of *Waters v. Ins. Co.*, 11 Peters, 213, a boat was destroyed by an explosion of gunpowder. Loss on account of explosions was not excepted under the policy. Justice STORY said : '' Some suggestion was made at the bar,

whether the explosion, as stated in the pleas, was a loss by fire, or explosion merely. We are of the opinion, that, as the explosion was caused by fire, the latter was the proximate cause of the loss."

In *Ins. Co. v. Corlies*, 21 Wend. 367, the building was blown up by gunpowder, intentionally, to prevent spread of an existing conflagration. The policy indemnified against fire. Held, a loss by the peril insured against within the meaning of the policy.

In *Briggs v. Ins. Co.*, 53 N. Y. 446, the plaintiff was engaged in rectifying spirits ; vapor from the works filled the house, and, coming in contact with a burning lamp, took fire and an explosion ensued, blowing off the roof and blowing down the walls. The policy provided that the company should not be liable from explosions of any kind unless fire ensues, and then for loss or damage by fire only. The court says: "It may be conceded that in the absence of this exception a recovery could have been had for the whole damage as for a loss by fire.

In *St. John v. Ins. Co.*, 11 N. Y. 516, the policy excepted loss occasioned by the explosion of a steam boiler. The loss was from an explosion of a steam boiler which threw down the building, and immediately thereafter the ruins took fire and were consumed. Justice JOHNSON says: "It is undoubtedly true, that if the policy contained no exception this loss would clearly have been a loss by fire. There would be no occasion to consider how the fire happened, the parties not having contracted for indemnity against fire occurring only in particular ways, but generally against fires."

In *Ins. Co. v. Foote*, 22 Ohio St. 348, the court defines an explosion generally to be a "sudden and rapid combustion ;" "all explosions caused by combustion are preceded by a fire." "The scientist may demonstrate, in a case where gunpowder is destroyed by fire, or in any case where the explosion is caused by or accompanies combustion, that ignition and combustion

precede explosion," but he argues that they occur in such rapid succession that the combustion and explosion would be covered by an exception contained in a policy that the insurer will not be liable for loss or damage resulting from an explosion. In the absence of such exception the court could only have held the loss to have been occasioned by fire. The St. Louis court of appeals, speaking through ROMBAUER, J., in considering a loss resulting from this same disaster, entertains similar views, though in that case it was not necessary to judicially pass upon the question. *Renshaw v. Ins. Co.*, 33 Mo. App. 394. An insurance company makes its own conditions, and they will be interpreted most strongly against them.

In *Ins. Co. v. Parker*, 23 Ohio St. 94, the insurance was upon an oil refinery. The property was destroyed by an explosion followed by a fire. The explosion was caused by gas escaping from the oil coming in contact with the fires under the stills. The policy provided that the company should not be liable for damages resulting from explosions caused by gas or other explosive substances. The policy insured against loss by fire. Held, that the exception did not cover damage by fire resulting from such explosion. To the same effect is *Ins. Co. v. Robinson*, 64 Ill. 265. There being no exception in this policy exempting the company from liability for loss occasioned by combustion of gas or vapor which results in damage from explosion we do not feel called upon or justified in ingrafting one upon it.

The instruction requested by the defendant was improper in confining the jury to a consideration of an explosion caused by an explosive substance coming in contact with a fire burning the building or its contents. None of the other instructions asked were more comprehensive.

Judgment affirmed; all the judges of this division concur.