HOME LODGE ASS'N v. QUEEN INS. CO. OF AMERICA.

A policy insured plaintiff against loss by fire, with the provision that the company should not be liable for loss caused by explosion, "unless fire ensues, and, in any event, for the damage by fire only." The evidence showed that the cause of an explosion was the igniting of escaping gas by a gas jet. **Held,** that there was no evidence tending to prove that the explosion was caused by fire, within the meaning of the policy, and, when there was no injury other than from the explosion, defendant was not liable.

(Opinion filed, Feb. 13; 1907.)

Appeal from Circuit Court, Edmunds County.    Hon. LORING E. GAFFY, Judge.

Action by the Home Lodge Association against the Queen Insurance Company of America.    From a judgment in favor of plaintiff, defendant appeals.    Reversed.

*L. W. Crofoot,* for appellant.

Where the insurance is against loss or damage by fire, without exception as to explosions, the policy covers the damage caused by the explosion of gunpowder or inflammable gas in the buildings as well as the damage by fire.    Scripture v. Ins. Co., 10 Cush. 356; Renshaw v. Ins. Co., 103 Mo. 595, 15 S. W. 945; Waters v. Ins. Co., 11 Peters 218.    But where the explosion occurred in a distant building and the concussion wrecked the insured building (no fire ensuing therein), the company was not liable, although there was a combustion of the explosive.    Everett v. Lon. Assurance Co., 115 E. C. L. 126; Caballero v. Home Mut. Ins. Co., 15 La. Ann. 217.    If the explosion originated the fire there was no liability whatever, either for the loss by the fire or the loss by the explosion, as the explosion and not the fire was the proximate cause of the damage.    Ins. Co. v. Tweed, 7 Wall. 44; St. John v. Ins. Co., 11 N. Y. 516; Haywood v. Ins. Co., 7 Bosw. 385; Strong v. Ins. Co., 21 N. Y. 103; Ins. Co. v. Foote, 22 O. St. 340.    In order to recover for the damage caused by an explosion as an incident in the progress of fire, there must be a general conflagration which in its ordinary course would destroy the insured property.    A mere lighted lamp, a burning gas jet or a match does not constitute such an antecedent fire.    Briggs v. Ins. Co., 53 N. Y. 446; Huer v. Ins. Co., 33 N. E. 411; Ins. Co. v. Foote, 22 O. St. 340; Wash-

burn v. Ins. Co., 2 Fed. 633; Mitchell v. Ins. Co., 183 U. S. 42; Vorse v. Ins. Co., 93 N. W. 569; Ins. Co. v. Dorsey, 56 Md. 70.

C. H. Barron and Albert Gunderson, for respondent.

It is a question of fact for a jury whether or not there was a conflagration in progress in the building at the time the explosion occurred. Scripture v. Ins. Co.; 10 Cushing, 356; Commercial Ins. Co. v. Robinson, 64 Ill. 265; Dows v. Ins. Co., 127 Mass. 346.

HANEY, J. This action is on a standard fire insurance policy, by the terms of which defendant insured plaintiff's building (an opera house), together with foundation, cellar, walls, and all permanent fixtures, "against all direct loss or damage by fire," except as therein provided, to an amount not exceeding $2,000. It was provided therein that defendant should not be liable for any loss caused directly or indirectly by explosion of any kind, "unless fire ensues, and, in that event, for the damage by fire only." The only defense interposed was that the injury to the insured property was caused by an explosion, and not by fire. The learned trial judge charged the jury, in substance, that the defendant was liable only for such injury as was caused by fire; that, in order to make it liable for the results of the explosion, such explosion must have been caused by a fire, which was separate from and independent of such an appliance as a gas jet or lamp; and that, if the explosion was not caused by a fire which would, if it had pursued its natural course, have resulted in the total or partial destruction of the building, the defendant was liable only for such injury as was caused by fire ensuing from the explosion. It was alleged in the complaint that plaintiff's building was damaged to the extent of $1,200. There was $3,000 of other concurrent insurance. The verdict was for $480, or two-fifths of the entire damage. So jury must have found that the explosion was caused by a fire other than some proper appliance for lighting the building, as evidence conclusively shows that practically all, if not all, of injury was caused by the explosion.

Was the evidence sufficient to justify such finding? We think not. The undisputed evidence shows that an acetylene gas machine was used in the insured building for the purpose of lighting the

same; that it was located under the stage in a brick vault four or five feet square; that the vault was in one corner of the fuel room, which was a room having brick or stone walls and about 22 by 14 feet in size; that there was a door leading from the fuel room to the south dressing room; that there was a gas jet on the brick wall of the fuel room, 19 feet from the vault in which the acetylene gas machine was located; that the gas jet was 5 feet above the ground and 4 feet below the wooden ceiling overhead; that there was no combustible material nearer the gas jet than the ceiling; that the gas jet had been lighted since early candle light; that the manager being informed that gas was escaping from the machine, went down to the fuel room, opened the door of the vault, turned off the water, and immediately stepped back and tried to close the vault door, but before he could do so there was an explosion, which wrecked the building and rendered him unconscious.

On direct examination the manager, as a witness for the plaintiff, testified as follows: "Well, I was selling tickets at the time, and some one—I don't know just who it was, but some one—came and told me that there was gas escaping. I went right down there, and opened the door, and stepped in, and turned the water off, and stepped back again. I done this very quick. I shut the door, or attempted to shut the door. I was looking then towards the west, As I was trying to shut the door, I was facing the west—that is, where the gas jet was—and I saw a fire. Of course, I went to push the door shut then, as I saw the fire. There was gas enough in the room to catch fire from this jet, but that caused no explosion; but I didn't get the door closed—never got it closed before the gas that was in the room here (the whole thing) caught fire, and I couldn't get the door shut, so it got in the vault. That is where the heavy gas was—in the vault; and as soon as it struck in the vault, inside the vault, why that was the last thing I knew. I didn't know anything after that. Q. At the time you were in the vault, as you say, and came out, was there any fire in the vault? A. No, sir; none nearer than 19 feet. Q. Did you, after the fire—did you examine the acetylene gas plant after the fire? A. I did a long time after. I saw where it was. I wasn't able to examine any-

thing for several weeks. Q. You may state whether the plant proper had blown up or exploded. A. The plant hadn't blown up. It couldn't blow up. It can't blow up, that kind of a plant. Q. Then what was the cause of the explosion that you speak of? A. Why it was caused from this jet burning gas, burning the gas. Q. The gas that was in the room? A. That gas that was in the room; yes. Q. And that communicated to the vault? A. It did. Q. From the outside? A. From the outside of the vault in the room."

On cross-examination he stated there was no fire in the fuel room, except the gas jet, when he went to examine the gas machine. Having been shown the proof of loss, which was signed by the witness as president of the plaintiff corporation, his cross-examination proceeded thus: "Q. Now, this proof of loss says, as to the origin of the fire: 'Gas escaping from the acetylene gas plant in said building, which became ignited by one of the gas jets, thereby setting said gas on fire, which caused the loss of the property of the insured under your policy of insurance.' And the loss therein named is the sum of $1,200. When you made this proof of loss, you understood that there was no fire, at the time of the explosion, except that the gas was on fire, didn't you; the escaping gas on fire? A. Yes, sir. Q. That is a fact, isn't it? A. Yes, sir."

Another witness for the plaintiff, on cross-examination, stated that he was in the building when the explosion occurred; that he immediately went into the fuel room; that there was considerable of a blaze where the generator had been; that the blaze which he noticed was in the generator; that it was the blazing gas "generated by carbide combustion"; and that the fire he saw had not reached the woodwork before it was put out. One witness for plaintiff testified that he examined the gas plant, to see whether or not it was injured by fire, and that it was to some extent, in that the paint and solder were melted. But the manager testified on redirect examination that the gas plant was damaged "by the timbers and bricks falling onto it," but that it was not "affected by the fire as to being melted." Aside from this there was no evidence disclosing any effects from fire at any place in the building. On the contrary, it was affirmatively shown that no other effects of fire were anywhere visible.

A careful consideration of all the evidence compels these conclusions: That there was no evidence whatever tending to prove that the explosion was caused by fire, within the meaning of the policy or the court's charge; but that it was established beyond any reasonable doubt that the cause of the explosion was the igniting of escaping gas by the gas jet, as stated in the proof of loss; and that the learned circuit court erred in denying defendant's application for a new trial.

Its judgment is reversed.