# New Hampshire Fire Insurance Company v. Rupard, et al.

### (Decided March 23, 1920.)

## Appeal from Clark Circuit Court.

1. **Insurance—Damages Incurred by Explosive.**—Where a policy of insurance insures against losses from fire, the damages incurred by the insured property by an explosion, which is preceded by an antecedent, hostile fire, in the insured property, and which causes the explosion, or of which the explosion is an incident, the damages from the explosion are within the risks insured against, whether the effects of the explosion are or are not ex-

cepted from the risks. In such instances the fire is the proximate cause of the damages.

2. Insurance—Explosion—Exception.—Under a policy of insurance, which insures against losses from fire, but · excepts from the risks, the damages to the insured property by an explosion, un·less fire follows the explosion, and then makes the insurer liable for the damages resulting from the fire, only, but, under which the insurer is liable for the damages caused by an explosion, which is an incident of or caused by an antecedent, hostile fire, in the property, an explosion, which is caused by the ignition of an explosive substance, by the flame of a lighted match, a lighted lamp, gas jet, cigar, or fire within a furnace or stove, where it is intended to be, is within the exception, and such fire is not an antecedent fire, within the meaning of the policy.

3 Insurance—Explosion—Exception.—Under a policy of insurance against losses by fire, but, which excepts damages to the insured property by an explosion, the fire necessary to precede and cause the explosion to make the insurer liable for the damages from the explosion must be such a fire, as, if unmolested would result in the total or partial destruction of the insured property, and such a fire is denominated a hostile one, and is distinguished from the flames of a lighted match, a lighted lamp, gas jet, cigar, or a fire in a furnace or stove, where it is intended to be, and such like, which are denominated innocent fires, and are not fires within the meaning of the policy.

4. Insurance—Explosion.—An explosion within the meaning of a policy insuring against losses from fire, is not an explosion as such might be understood by scientists, but is what an explosion is understood to be by ordinary persons generally.

GORDON & LAURENT and FRANK M. DRAKE for appellant.

BENTON & DAVIS, PENDLETON & BUSH and B. R. JOUETT for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

In the circuit court, the appellant, The New Hampshire Fire Insurance Company, and each of the following named insurance companies, Phoenix Assurance Company, Ltd., of London, Boston Insurance Company, Equitable Fire and Marine Insurance Company, Michigan Commercial Insurance Company, Germania Fire Insurance Company, of New York, Caledonian Insurance Company, The Connecticut Fire Insurance Company, Northern Fire Insurance Company, Henry Clay Fire Insurance Company, and The North American Assurance Company, were defendants in separate actions, which were instituted against them by the appellees, Thomas

Rupard, et al., who were partners, and engaged in the business of merchants in Winchester. The appellees held a policy of insurance in each of the companies, which insured them against damages, to their goods and wares, and the fixtures in their place of business, from fire. Each of the policies contained the following stipulation:

"This company shall not be liable for loss caused directly or indirectly  .  .  .  (unless fire ensues and in that event for the damages by fire only), by explosion of any kind.  .  .  ."

The petitions averred, that, on June 1, 1918, the appellees suffered damages in the sum of $5,501.25 from the partial destruction of their stock of merchandise by fire, and $884.40 from partial destruction of the fixtures by the same fire, while the merchandise and fixtures were in their business house, which was designated in the policies.

The insurance companies, each, filed an answer, wherein the amounts of the losses were denied, but, damages, in the sum of $385.99, to the stock of merchandise by fire, was admitted. Each of the companies, also, in its answer, relied upon the clause in the policy, which exempted it from liability for damages, suffered by the insured property from explosion, and affirmatively averred, that practically all the damage, suffered by the property and complained of in the petitions, was caused by an explosion of gas, which took place underneath the floor of the building, and the only damage by fire, was from a fire which ensued after the explosion, and that such damage amounted to the sum of $385.99, only.

The replies denied, that the damages resulted from the explosion, or that the damage by the fire amounted only to the sum, admitted in the answers, but, admitted that an explosion did occur, and averred, that the building and goods were on fire before the explosion, and the explosion was a result of the antecedent fire, and the fire was not the result of the explosion.

By agreement of the parties, the eleven actions were tried together, and a joint verdict and judgment rendered as if there had been but one action. By further agreement, the appeals of all are made upon one record and considered as if but one appeal, under the style, above named.

The trial resulted in a verdict by the jury in favor of the appellees, in the sum of $4,500.00 damages to the

goods and wares, and $800.00 to the fixtures, and a joint judgment, against the defendants for the damages, was rendered.

The defendants' motion for a new trial being overruled, they have appealed, and urge as, grounds for a reversal, (1) that the court erred in overruling their motion for a directed verdict at the close of the plaintiffs' evidence and at the close of all the evidence, and, (2), that the court erred in giving and refusing instructions to the jury.

There is substantially no dispute as to the facts relative to the manner of the losses; that is, the facts, the occurrence of which were visible, but, the inferences from the visible facts are susceptible of much dispute. The room in which the goods, wares and merchandise were stored, which was covered by the policies of insurance, was seventy-five feet in length, twenty-one feet in width and ten or eleven feet from floor to the ceiling. About fifteen feet from the rear end of the room, and rather to one side from the center, was situated a gas stove, used for heating the room, and was supplied with natural gas, by a pipe, which protruded through the floor, from underneath at that place. Underneath the floor, at the front end of the room, was a cellar about fifteen feet in length, and the same in width. The distance, from the rear end of the cellar to the location of the pipe, was about forty-five feet, and from the cellar to the rear wall of the room, the ground approached so near to the floor, that the space was insufficient to permit the body of a man to crawl between them. On the morning of the day upon which the losses occurred, the appellees removed the stove, and severed its connection with the pipe. In the afternoon, the services of a plumber were secured, by some one, for the purpose of ascertaining whether there was a leak of the gas from the pipe, and if such was discovered to be true, presumably, to remedy the defect in the pipe. Strangely, the record does not indicate who it was, that secured the services of the plumber, or why it was that it was apprehended, there was a leak of the gas; but the plumber came into the building and went to where the pipe had been disconnected from the stove, but did not discover the odor of gas, and then he went to the front end of the room, and descended into the cellar, but, finding, that the cellar did not extend back to the pipe, and the space between the

floor and the ground underneath was not of sufficient depth to enable him to reach the place where the pipe was, he returned into the store room, with the statement, that he would have to remove some of the boards, which composed the floor to enable him to continue the investigation. He, then, did remove two short boards from the floor, near the place where the pipe had been connected with the stove. At this time, the doors and windows of the house were open, and had been during the day. The plumber who states that his organ of smell is susceptible to the odor of gas, and that he had not discovered the presence of gas anywhere upon the premises, and after removing the boards, he, yet, was unable to detect the odor of gas, then, lighted a match and held it near to the aperture, which he had made in the floor, presumably, for the purpose of enabling him to see underneath the floor through the aperture. A flame of fire immediately occurred, which, at the first, was drawn down through the aperture, but, immediately, came back and proceeded to blaze upward. The flame at the first was small, but rapidly grew to three or four feet in height. The boards of the floor around the aperture, for two or three feet, took fire and the fire spread in lines to several feet from the hole in the floor. A table, upon which the merchandise was piled, began to burn, and, also, the merchandise upon it. Shoes and papers upon the floor, clothing and other articles, nearby, took fire and were burning. The flame grew until it reached nearly to the ceiling of the room. The plumber inquired where the meter was situated, and being informed by one of the proprietors, started toward the front of the room. One of the proprietors was about fifteen feet away from the fire, in conversation with a customer, when his attention was attracted to it, which, he says, was then five or six feet in height, from the floor. The floor was burning as well as the table nearby, and he stepped to the table and began to attempt to beat out the flames, upon the burning clothing with his hands. Another of the proprietors was engaged about fifteen feet away, when his attention was attracted to the flame, and approaching it, he was directed to call the fire department, which he started to do, and got to near the front of the room. At this time, an employee, who was nearby, seized a bucket of waste water from the cooler, and threw it upon the flames, when, immediately, an explosion, underneath the

floor, occurred, which blew out the windows in the room, and nearly wrecked the building. The time, which transpired between the lighting of the match and the explosion, can not, from the evidence, be definitely fixed, as the opinions of the witnesses differ, and under the excitement of the moment, it is apparent, that their mere opinions would not be of much value, but the plumber, after seizing a wrench, started toward the front of the building, and had gone about forty feet when the explosion occurred, and the one, who started to call the fire department, did not reach the front of the building before the explosion, but some appreciable time had expired between the lighting of the match and the time, when the plumber and the other started toward the front of the building, and hence, from the time of the lighting of the match to the explosion, was probably a period from three to five or six minutes. Whether the fire department ever arrived, does not appear, but certain other parties, after the explosion, quenched the flames, by the use of water and chemicals for the extinguishment of fire. The floor, for several feet around the hole, made by the removal of two short boards, was charred and burned; the boxes, upon the shelves in the room, were scorched from heat and flames, and much of the merchandise showed the effects of burning. The injuries to the merchandise consisted in its being burned, scorched, torn, broken and injured by water and chemicals, all of which were the results of fire, and the efforts to subdue the fire, and the explosion.

The overruling of the appellant's motion for a directed verdict, in their favor, at the close of the evidence for appellees, should not have prevailed, as the appellants' admitted, in their answers, a loss suffered by appellees within the risks insured against, by the policies, from the action of fire alone, and they do not, now, insist, that the court should have sustained their motion; but, at the close of all of the evidence, they moved the court to direct the jury, peremptorily, to find a verdict for the plaintiff, for the amount of the loss admitted by the answers, and nothing more. The motion was properly overruled, because the evidence was contradictory as to the amount of the damages, which had been caused, solely, by fire within the risk, provided against, by the policies, and there was evidence, which tended to prove, that the damage, from fire alone, was in excess of the

sum, which the jury was directed to find by the instruction moved for. The important effect of the instruction would have been, if given, that the court, as a legal conclusion from the facts in evidence, would have held, that the appellees were not entitled to recover for any damages to the insured property from the effects of the explosion; and appellants insist, that damages, resulting from an explosion of any kind, being excepted from the risk insured against, under the contracts, embraced in the policies, it was error to deny the instruction under the uncontradicted proof of the facts. That a distinction has been held to exist, by many courts, between the liability of an insurer under a contract, which unqualifiedly insures against loss from fire, and does not contain an exception of a loss to the property by explosion, and the liability under a contract, which insures against fire, but excepts the risk of loss caused by an explosion, must be conceded. It must, also, of course, be conceded, that there is no liability upon an insurer under a contract, which insures against risk from fire, only, for damages caused by an explosion, unless there is an ignition or burning in whole or in part of the insured property by a fire, as the term is commonly understood, either as a cause of or in consequence of the explosion. However, the general rule prevailing, is, that an insurer under a contract, which insures against losses from fire, is liable for damages, caused to the insured property by an explosion, where there is a fire, as such term is popularly understood, burning in the property, and it is followed by an explosion, which is an incident of or is caused by the fire. In such instances, it is considered, that the entire loss, both from the fire and the explosion, is a loss caused by the fire, and this rule of liability is applied to the insurers under the contracts, which except the risks of explosion, as well as those, which do not except such risks. The fire in such instances, is held to be the proximate cause of the entire loss. Waters v. Merchants L. Co., 36 U. S. 213; Sripture v. Lowell Mut. Fire Ins. Co., 64 Mass. 357; Millaudon v. N. O. Ins. Co., 4 La. Ann. 15; Washburn v. Farmer's Ins. Co., 2 Fed. 304; Washburn v. Miami Valley Ins. Co., 2 Fed. 633; Hall v. National Fire Ins. Co., 115 Tenn. 513; Dows v. Fanuel Hall Ins. Co., 127 Mass. 346; Smith v. Universal Ins. Co., 19 U. S. 176; Babcock v. Montgomery Co. Ins. Co., 4 Comst. (N. Y.) 326; Peters v. Warren Ins. Co., 39 U.

S. 99; Mitchell v. Potomac Ins. Co., 183 U. S. 51; Amer.
Steam Boiler Ins. Co. v. Chicago Sugar Refining Co., 57
Fed. 294; Renshaw v. Ins. Co., 33 Mo. App. 394; Dorsey
v. Ins. Co., 56 Md. 70; Ins. Co. v. Foote, 22 Ohio St. Rep.
340; La Force v. Williams City Fire Ins. Co., 43 Mo.
App. 518; Lynee Gas & Electric Co. v. Meriden Fire Ins.
Co., 20 R. R. A. 297; Clements, p. 123; May, vol. 2, 1956;
Hustace v. Phoenix Ins. Co., 62 L. R. A. 651. Under policy
contracts which insure against losses from fire and which
contain no exceptions of risk from explosions, there is
much contrariety of opinion as may be gathered from
the decisions of the courts, in the various jurisdictions,
as to what constitutes a fire within the meaning of the
contract; and as the proximate causes of the loss, where
an explosion has occurred, as well as a fire; and the ex-
tent of the liability of the insurer from losses by fire
where an explosion has also occurred; but, under policies
containing the terms of the ones upon which the instant
actions were founded, there seems to be a unanimity of
opinion among the courts, which have considered the
subject, as to what shall constitute a preceding or ante-
cedent fire, necessary under the principles applying to
constitute the proximate cause for the losses, where an
explosion is an incident of or is caused by the fire, and,
also, causes damages to the insured property. The con-
tracts in the instant cases, except from liability, the in-
surers, for damages to the insured property by an ex-
plosion, unless a fire ensues, and then the damages are
confined to the losses from the fire, only. Under contracts
for insurance, against fire, containing the above stipula-
tions, as heretofore stated, the insurers are not liable
for any damages to the insured property, caused by an
explosion which is not preceded by fire, which causes it,
or of which it is an incident. If a fire precedes the ex-
plosion, and causes it, then the entire damages, caused
by both the fire and the explosion, are, under the general
rule, as above stated, held to be damages by fire, and are
within the risks, insured against. Mitchell v. Potomac
Ins. Co., 183 U. S. 42; Hall v. National Fire Ins. Co., 115
Tenn. 513; Transatlantic Fire Ins. Co. v. Dorsey, 56
Md. 70; United Ins. Co. v. Foote, 22 Ohio St. Rep. 340;
Stephens v. Fire Association, 123 S. W. (Mo.) 63; Briggs
v. North American & Merchants Ins. Co., 53 N. Y. 446;
Home Lodge Assn. v. Queens Ins. Co., 110 N. W. 778;
La Force v. Williams, etc., Co., 43 Mo. App. 518; Phoenix

Ins. Co. v. Greer, 61 Ark. 512; Heuer v. National Ins. Co., 33 N. E. 411; Wheeler v. Phoenix Ins. Co., 203 N. Y. 283; German American Ins. Co. v. Hyman, 42 Col. 156; Metropolitan Casualty Co. v. Bergheim, 21 Cal. 527; Cohn v. National Fire Assurance Co., 96 Mo. App. 240; Ross v. London, etc., Co., 84 Atl. 1050; Heffron v. Kittaning Ins. Co., 132 Pa. St. 580; Smiley v. Citizens F. M. & L. Ins. Co., 14 W. Va. 33; St. Johns v. Amer. Mut. Ins. Co., 11 N. Y. 516. From the above authorities, a rule is deducible by which to determine the character of the fire, which must precede the explosion and ignite the explosive substance or cause the formation of the substance, causing the explosion, in order that the effects of the explosion may be taken out of the exception in contracts for the insurance against losses by fire, as in the instant case. Such a fire is substantially defined in Home Lodge Association v. Queens Ins. Co., *supra,* as such a fire, that if it had pursued its natural course, would have resulted in a total or partial destruction of the property insured.

Such a fire is defined substantially in the same way, in Transatlantic Fire Ins. Co. v. Dorsey, *supra,* and in German American Ins. Co. v. Hyman, *supra.* Such a fire in the insured property followed by an explosion during the progress of the fire, as an incident of or caused by the fire, is held to be the proximate cause of the damages from the explosion as well as the fire, and within the risks insured against by the contract, although the contract excepts liability for loss by explosion. Such a fire is distinguished from the flame of a lighted match, a lighted lamp, gas jet, cigar or a fire within a furnace or stove where it is intended to be. The former kinds of fire are usually denominated hostile, in the nomenclature of the law, while the latter kinds are denominated innocent fires, and when an explosion is caused by an explosive substance coming into contact with an innocent fire, alone, the effects of the explosion are attributed to the explosion as the proximate cause and not the fire, and hence, damages, from such an explosion are within the exceptions in the contract.

A rule of evidence, which applies to such a controversy, as in the instant case, is that the burden is cast upon the insurance companies, before they can escape liability, to show, that the damages claimed, fall within the exception in the policies. German American Ins. Co. v. Hyman, *supra,* Stephens v. Fire Association,

*supra,* Transatlantic Fire Ins. Co. v. Bamberger, 11 S.
W. 595; Phoenix Ins. Co. v. Luce, 123 Fed. 257; Blosingame v. Home Ins. Co., 17 Pac. 925; Friedman Co. v.
Atlas Ins. Co., 133 Mich. 212; London & L. F. Ins. Co.
v. Crunk, 91 Tenn. 376.

From the facts proven, it may reasonably be inferred,
that the explosion was that of natural gas, with an admixture of the necessary quantity of air, and heated to
the necessary degree to produce an explosion. While no
one pretends to have smelled the odor of natural gas or
to have apprehended an explosion, and the plumber is
emphatic in his statement, that he did not discover the
presence of gas, but, from the fact, that he came to
stop a gas leak it may be inferred, that some one had detected it, or thought so at least. A gas pipe was under
the floor, and the phenomena was such as common experience teaches, accompany the presence of natural gas,
under certain circumstances. Under the principles deducible from the authorities cited, it is very clear, that
if the explosion was caused, alone, from the flame of the
match in the hands of the plumber, coming in contact
with inflammable natural gas, which took fire, and continued to burn, and such inflammable gas was a part of
a body of natural gas, which was of an explosive character and thus the explosion resulted, there would be no
liability upon the insurers for any damages resulting
from the explosion, unless a fire resulted, and then from
the effects of the fire, only. It is, however, equally true,
that if an antecedent, hostile fire was burning in the
building, and in the insured property, which was of such
a character, that, if unmolested, would have consumed
the property and that the explosion followed this fire as
a result or incident of it, the insurers would be liable for
the damages, caused by the explosion, as well as the damages, caused from the fire. The appellants insist, that
all the evidence, is to the effect, that the inflammable gas
in the room, was ignited by the flames of the match, and
that its burning therein for a short space of time, before
the noise and effect of the explosion occurred, was only
a part of the explosion, and hence, that the burning of
the floor, fixtures, papers, boxes and clothing, before the
culmination of the explosion, was a fire subsequent, and
not antecedent to the explosion. However, well this
theory may accord with scientific principles as applied

to such an occurrence, it is not in accord with the commonly accepted opinion of what constitutes an explosion. Ordinary people, other than scientists, would hold, that the explosion occurred, when the sudden expansion took place, which wrecked the building, accompanied by a more or less loud report. In Mitchel v. Potomac Ins. Co., *supra,* the word, explosion, as used in an insurance policy, was defined to be what ordinary men, not scientists, understood an explosion to be, and this view of what the term in a policy of insurance is intended to mean, is concurred in, generally. That such is the popular acceptation of the term, is borne out by the five or six eye witnesses, all of whom testify, that the floor, table, clothing, papers, and boxes were burning, an appreciable time, before the explosion occurred. Such fire was a hostile one, there can be no doubt, since the floor of the building, and portions of the insured property, had ignited, and were burning, and if the fire had been permitted to continue, there is no reason to suppose, that it would not have consumed the building and its contents. If it be conceded, that the flame of the match was an innocent fire, and that the combustible mixture of air and gas in the room, extended, in a contiguous mass to the mixture, which was explosive, this fire, before the explosion occurred, had generated a hostile fire within the meaning of the term. The mere burning of inflammable natural gas, which does not result, in a sudden, violent and forceful expansion, the effects of which is to injure or destroy property by the force of the expansion, would not be an explosion, within the meaning of an insurance contract according to the understanding of common men. That the inflammable gas, which took fire, in the store room, was at the time, connected with the mixture, which was explosive, is a probability, but, not a necessity, and hence, it can not be certainly said, that an explosion would have occurred, but for other circumstances, which transpired. One of the expert witnesses, closed his evidence with the statement, that he did not believe, that any one could know how the explosion occurred. Neither of the cases cited, nor any case to which our attention has been called, wherein it was held, that the explosion preceded the fire, was there an intervening hostile fire, between the ignition of the explosive substance by an innocent fire and the explosion, such as appears in the instant case. That a hostile fire was burning in the in-

sured property, before the explosion occurred, is proven by the evidence of all the persons present. The time between the flame of the match and the explosion, the throwing on of the bucket of water, which was reasonably calculated to disturb and affect conditions, as the explosion did not occur, until after that was done, and the additional heat from the burning of the property, are circumstances to be considered, in determining the cause of the explosion. Hence, the contradictions arising, the inferences to be drawn from the visible facts and the uncertainty attending the truth of the issue from all the facts, make the issue, as to whether the explosion was an incident of, or caused by an antecedent hostile fire in the insured property, or whether caused by the ignition of the explosive substance by an innocent fire, a question for the jury, and negatives the contention, that the court was authorized to determine the issue, as a matter of law. The issues having been submitted to the jury, under instructions, which defined the rights of the parties, in substantial accord, with the principles herein expressed, the judgment is affirmed.

The whole court sitting.