COMMERCIAL STANDARD INSURANCE COMPANY, Appellant,

v.

F. L. FEASTER, doing business as Feaster Trucking Service, Appellee.

No. 5825.

United States Court of Appeals Tenth Circuit.

Sept. 2, 1958.

Paul R. Kitch and Philip Kassebaum, Wichita, Kan. (Homer V. Gooing, Wayne Coulson, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill, Wichita, Kan., were with them on the brief), for appellant.

Malcolm Miller, Wichita, Kan. (T. B. Kelley, Great Bend, Kan., George B. Powers, Gerald Sawatzky, Wichita, Kan., Kelley, Conner & Opie, Great Bend, Kan., Foulston, Siefkin, Schoeppel, Bartlett & Powers, Wichita, Kan., were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and MURRAH and BREITENSTEIN, Circuit Judges.

BRATTON, Chief Judge.

B. D. Egbert owned a building in Pratt, Kansas. F. L. Feaster was engaged in the business of transporting petroleum products by crude oil tractors, and trailer tanks. And Commercial Standard Insurance Company was engaged in the business of issuing policies of fire and extended coverage insurance. Egbert leased the building to Feaster. The lease provided among other things that Feaster should not be responsible to Egbert for damage or injury to the building by reason of fire, irrespective of cause, occurring during the occupancy thereof by Feaster. Commercial issued to Egbert a policy of fire and extended insurance covering the building. While the building was in the exclusive custody of Feaster under the lease, and while the insurance was in force and effect, the building was destroyed. Commercial paid to Egbert the face amount of its policy and then instituted this action

against Feaster alleging that the building was destroyed by explosion; that the explosion would not have occurred unless Feaster had been guilty of careless and negligent conduct; and that upon payment under the terms of the policy, Commercial became subrogated to the rights of Egbert to recover against Feaster to the extent of the amount paid. By answer, Feaster pleaded that the building was destroyed by fire; that by the terms of the lease, Feaster bore no responsibility in damages to Egbert for such destruction; that Commercial had only such rights as it acquired from Egbert through subrogation; and that therefore Feaster was not liable to Commercial. The case was tried to a jury. When plaintiff rested, the court instructed a verdict for defendant. Judgment was entered upon the verdict, and this appeal brought the case here for review.

■■■■ Although sometimes presenting difficulty in respect to application, a general rule firmly imbedded in procedural jurisprudence in the Federal courts is that on motion for a directed verdict upon the crucial issue of fact in a civil action at law, the evidence and the inferences fairly to be drawn from the evidence must be considered in the light most favorable to the party against whom the motion is directed. And if the evidence and the inferences fairly drawn therefrom—viewed in that manner—are such that reasonable minded persons in the exercise of fair and impartial judgment may reach different conclusions upon the crucial issue of fact, the motion should be denied and the question submitted to the jury. But it is the province and duty of the court to direct a verdict where the evidence is without dispute or is conflicting but of such conclusive nature that if a verdict were returned for the plaintiff or defendant, as the case may be, the exercise of sound judicial discretion would require that it be set aside. Slocum v. New York Life Insurance Company, 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.

Ed. 720; Pennsylvania Railroad Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 77 L.Ed. 819; McKenna v. Scott, 10 Cir., 202 F.2d 23; Franks v. Groendyke Transport, 10 Cir., 229 F.2d 731; Brodrick v. Derby, 10 Cir., 236 F.2d 35.

■■■■ Another equally well established general rule is that in order to warrant the submission of a crucial issue of fact to the jury for its determination, the evidence relating thereto must be based upon more than mere conjecture, speculation, or surmise. It must rise above mere alternative possibilities. It must bring the theory upon which reliance is placed to the level and dignity of a reasonable probability. Franklin v. Skelly Oil Co., 10 Cir., 141 F.2d 568, 153 A.L.R. 156; Fruehauf Trailer Co. v. Gilmore, 10 Cir., 167 F.2d 324; Bearman v. Prudential Insurance Company of America, 10 Cir., 186 F.2d 662; Independent-Eastern Torpedo Co. v. Ackerman, 1 Cir., 214 F.2d 775; Ralston Purina Co. v. Edmunds, 4 Cir., 241 F.2d 164, certiorari denied 353 U.S. 974, 77 S.Ct. 1059, 1 L. Ed.2d 1136.

Since the lease effectively protected Feaster from liability to Egbert for destruction of the building by fire, irrespective of the cause, and since Commercial asserted a right of recovery acquired by subrogation from Egbert, Commercial's case was geared to a destruction of the building by explosion. In other words it was necessary for Commercial to prove that the building was destroyed by explosion, not fire. In this setting, and in its effort to make a prima facie case for submission to the jury, Commercial adduced evidence which tended to establish these facts and circumstances. The building (a concrete block structure with sheet metal roof on wooden girders) was approximately forty-five or fifty feet square and was partitioned into three rooms. The room on one side was used as a shop somewhat similar to that of an ordinary garage. The room in the center was used as a washroom. And the room on the other side was used for office and storage purposes. There

was a door between the shop and the washroom and one between the washroom and the room used for office and storage purposes. There were two sliding doors leading from the outside into the shop, and there was a swinging overhead door leading from the outside into the washroom. There was a heater in the shop and an open flame heater in the washroom. Sometime after twelve o'clock on the day in question a truck driver for Feaster brought his tractor and trailer tank to the building, backed the tank into the washroom, and put the tractor in the shop for repairs. The tractor and trailer tank had been used that morning for the delivery of some crude oil. The method of emptying tanks of that kind was by a hose located on the bottom of the tank. A safety cutoff valve was on a pipe underneath the tank to which the hose was connected. The cutoff valve was designed to prevent leakage. When tanks of that kind and capacity were emptied most of the crude oil was pumped out but there usually was some residue. Sometimes as much as ten gallons of residue would cling to the sides. After the trailer tank had been in the washroom for approximately an hour, the truck driver determined to get on top of it and wash off some crude oil. For that purpose, he had an old five-gallon grease pail with some liquid in it and he was using a quart can to dip the liquid out of the grease pail. He was on top of the trailer engaged in washing off crude oil. It was a cold day in January. The heater in the shop was burning, and it was warmer inside the building than outside. Another employee of Feaster was sitting on the fender of the tractor in the shop and working on the tractor. Both a fire and an explosion occurred inside the building. Looking over the radiator and through the door leading to the washroom, the employee sitting on the fender of the tractor saw fire. He could see the fire from the top of the workbench at the corner of the door. He was dumfounded and attempted to get down off the fender of the tractor to investigate but the explosion occurred before he suc-

ceeded in doing so. He was in position to see how fast the fire moved. At one juncture he said that it would be hard to say how long it was between the time he saw the fire and the time of the explosion. At another juncture he said that the two were almost instantaneous. At another, he said that he saw the fire before the explosion occurred. And at another, he said that some time elapsed between the first time his attention was called to the fire and the time of the explosion. A third employee of Feaster was in the building but was starting to go outside at the time of the catastrophe. While his testimony was silent in respect to the matter, it was said in the opening statement to the jury made by one of the attorneys for Commercial that such employee heard someone shout "fire", and that he thought it was the employee on top of the tank. Resulting from the fire and explosion, debris flew in the air, timbers were charred, the building was demolished, the employee on the top of the trailer was killed, and the employee on the fender of the tractor was injured. One expert witness expressed the opinion that vapors escaped from the tank, spread to the back of the building toward the heater, caught fire, entered the inside of the tank, and caused the tank to explode. And another expert witness expressed the view that vapors from the crude oil in the tank got down to the floor, moved across the floor to where they came in contact with the heater and caught fire, the fire got into the tank, and the tank blew up.

■■ Viewed in the light most favorable to Commercial, the evidence thus reviewed, together with the concession in the opening statement to the jury in respect to the word "fire" being shouted, made it clear that fire originated from combustion; that there followed an intervening moment or instant; and that then the explosion occurred. Otherwise, it would have been impossible for one employee to see fire, to become dumfounded at seeing it, and to start to get off the fender of the tractor to make an

investigation, before the explosion occurred. Otherwise, it would have been impossible for another employee to hear someone—and he thought it was the employee on top of the tank—shout "fire", before the explosion. And if fire was in progress before the explosion occurred, and the explosion was the result of the antecedent fire, the damage to the building must be treated as having been caused by fire within the intent and meaning of the provision in the lease safeguarding Feaster against liability for damage caused by fire, even though the principal damage to the building was caused by explosion. That conclusion finds persuasive support by appropriate analogy in the well recognized general rule that where fire originates from combustion and is followed by explosion traceable to the antecedent fire, there is liability under an insurance policy insuring the property against fire, even though the major part of the damage to the insured property is caused by explosion. The rationale of such general rule is that the explosion is an incident of the antecedent fire. Among the many cases enunciating that general rule see, Scripture v. Lowell Mutual Fire Insurance Co., 10 Cush., Mass., 356, 57 Am.Dec. 111; Renshaw v. Missouri State Mutual Fire & Marine Insurance Co., 103 Mo. 595, 15 S.W. 945; German American Insurance Co. v. Hyman, 42 Colo. 156, 94 P. 27, 16 L.R.A.,N.S., 77; Furbush v. Consolidated Patrons' & Farmers' Mutual Insurance Co., 140 Iowa 240, 118 N.W. 371; Githens v. Great American Insurance Co., 201 Iowa 266, 207 N.W. 243, 44 A.L.R. 863; Scully v. Bremer County Farmers' Mutual Fire Insurance Association, 215 Iowa 368, 245 N.W. 280; German Baptist Tri-County Mutual Protective Association v. Conner, 64 Ind.App. 293, 115 N.E. 804; Stillpass v. Fidelity & Guaranty Fire Corporation, 71 Ohio App. 197, 48 N.E.2d 1017; New Hampshire Fire Insurance Co. v. Rupard, 187 Ky. 671, 220 S.W. 538; Allied American Mutual Fire Insurance Co. v. Wesco Paving Co., 35 Tenn.App. 154, 243 S.W.2d 141.

The case of Maryland Casualty Co. v. Cherryvale Gas, Light & Power Co., 99 Kan. 563, 162 P. 313, L.R.A.1917C, 487, is distinguishable. There the policy insured the plate glass front of a building against breakage. The policy contained a provision expressly excluding from the coverage loss or damage resulting directly or indirectly from fire, whether on the premises or elsewhere. In response to an application for gas by a tenant occupying the second floor of the building, an employee of the gas company turned on the gas by opening the wrong stop box—a stop box which connected with some pipe leading into an adjacent building; and gas released from the stop box found its way into the building having the insured plate glass front. The presence of gas was detected in the vicinity; a servant of the gas company ignited it with a match while hunting in the basement of an adjoining building for the leak. An explosion occurred instantaneously and blew out the plate glass front. The insurer paid the insured for the loss and sought as subrogee to recoup from the gas company. It was held in effect that under those circumstances the damage to the insured plate glass front did not come within the provision in the policy expressly excepting or excluding from the coverage damage caused by fire. The case did not go further. Here, fire started, a moment or instant intervened, and then the explosion occurred as an incident of the antecedent fire.

Under the evidence, considered as a whole in the light most favorable to Commercial, a verdict for Commercial could have been based only upon conjecture, speculation, or surmise in the nature of alternative possibilities not rising to the level or dignity of a reasonable probability. And if such a verdict had been returned, it would have been the duty of the court in the exercise of sound judicial discretion to set it aside. Therefore the verdict for Feaster was properly directed.

The judgment is

Affirmed.