HOOD, Judge.
Plaintiff, Levert-St. John, Inc., instituted this suit against a number of insurance companies to recover from each its proportionate share of a loss of $41,065.92 which is alleged to have been sustained by plaintiff when the evaporator installation at its sugar factory, in St. Martin Parish, was partially destroyed on October 9, 1959. All of the defendant insurance companies had issued policies of fire insurance to plaintiff covering the sugar factory.
Defendant filed exceptions of no cause and no right of action, contending that the allegations in plaintiff’s petition described a loss by explosion rather than by fire, and that defendants are not liable because loss by explosion was expressly excluded from coverage under the terms of each of the policies issued to plaintiff. Judgment was rendered by the trial court sustaining these exceptions of no cause and no right of action and dismissing the suit. Plaintiff has appealed from that judgment.
In considering these exceptions of no cause and no right of action, all well pleaded facts in plaintiff’s petition must be assumed to be true, and if the petition sets forth a cause and a right of action in any respect, or as to any part of plaintiff’s demands, the exceptions must be overruled. Harwood Oil and Mining Company v. Black, 240 La. 641, 124 So.2d 764.
Plaintiff’s petition contains the following pertinent allegations of fact:
“6.
“On said date, i. e., October 9, 1959, at approximately 7:20 A.M., the evaporator installation at Levert-St. John Sugar Factory was partially wrecked by an explosion which plaintiff is informed and believes, and on such information and belief alleges, resulted from a fire which was ignited in the course of repairing a vacuum leak in the vapor line from the evaporator to the water condenser when the welder who had been engaged to make the necessary repairs struck an arc with his electrode at the opening in the vapor line.
“7.
“On further information and belief, plaintiff alleges that when the said welder so struck an arc as aforesaid, he ignited almost pure hydrogen gas which had accumulated overnight in the upper section of the evaporator installation, including the condensor, the separator and the aforesaid vapor line, as a result of the continued reaction of a warm solution of water and 18° Baume hydrochloric acid employed in the cleaning of said evaporators, with the cast iron parts thereof.
“8.
“On further information and belief, plaintiff alleges that once ignited, the *496 said almost pure hydrogen gas rapidly carried the flame downward into an area of said evaporator installation where the mixture of hydrogen and air, which had been displaced downward in the course of the hydrogen accumulation in the upper portion to the system, was within explosive limits, and where an explosion then occurred.”
All of the policies issued by defendants to plaintiff conform to the Standard Fire Insurance Policy set out in the Insurance Code of Louisiana. LSA-R.S. 22:691. Under these policies the plaintiff is insured against all “direct loss by fire,” but all of the policies expressly exclude from coverage any loss occurring as a result of explosion. In excluding loss from explosion, each policy contains the following provision:
“ * * * this Company shall not be liable for loss occurring * * * (c) as a result of explosion or riot, unless fire ensue, and in that event for loss by fire only.”
The term “fire” has been defined as, “the effect of combustion.” Black’s Law Dictionary, Fourth Edition, page 760. Combustion may take place in one of two different ways: The rapid, sudden and violent combustion of explosive substances, commonly called an “explosionor the slower combustion of non-explosive substances, commonly called a “fire.” Under the provisions of the ordinary fire insurance policy which does not exclude losses occurring as a result of explosions, a loss resulting from either of these two types of combustion is generally considered to be a “loss by fire,” and under those circumstances it is not necessary to make any distinction between a fire and an explosion. Under a fire insurance policy which does specifically exclude from coverage losses resulting from explosions, however, it is necessary to determine whether the loss was caused by fire or by explosion, because a loss caused by the former is covered while a loss caused by the latter is not.
The issue presented here, therefore, is whether the loss described in plaintiff’s petition was a “direct loss by fire,” which is covered by the policies, or whether it was a loss occurring “as a result of explosion,” which is specifically excluded from coverage.
The petition, we note, does not allege that there was any fire following the explosion, the only fires alleged being those which allegedly occurred prior to the explosion.
Counsel for all parties agree that there is no jurisprudence in Louisiana relating to this particular issue, but they have cited a number of cases from other jurisdictions where this question has been considered. Some of these cases are not applicable, we think, because the fire insurance policies there involved did not exclude coverage of loss from explosion, and accordingly those cases did not involve the issue which is presented here. In our opinion, however, the great weight of authority is clearly expressed in the cases of New Hampshire Fire Insurance Company v. Rupard, 187 Ky. 671, 220 S.W. 538; and Githens v. Great American Ins. Co., 201 Iowa 266, 207 N.W. 243, 44 A.L.R. 863; both of which cases are cited and relied upon by plaintiff.
The facts in New Hampshire Fire Insurance Co. v. Rupard, supra, were that a plumber inserted a lighted match in a small hole in the floor of a building to search for a gas leak. This match ignited some gas which had accumulated beneath the floor, which in turn ignited the floor and some furniture and merchandise in the building, and then developed into a fire which reached as high as the ceiling. This fire lasted from three to six minutes, and then an explosion occurred. The owner of the building sued to recover the amount of his loss from his fire insurer, under a policy which specifically excluded coverage of loss by explosion. The Kentucky Court of Appeals held that the loss was caused by fire, and plaintiff was allowed to recover. In arriving at that conclusion, the Court said:
“ * * * The contracts in the instant cases except from liability the insurers *497 for damages to the insured property by an explosion unless a fire ensues, and then the damages are confined to the losses from the fire only. Under contracts for insurance against fire, containing the above stipulations, as heretofore stated, the insurers are not liable for any damages to the insured property caused by an explosion which is not preceded by fire which causes it, or of which it is an incident. If a fire precedes the explosion and causes it, then the entire damages caused by both the fire and the explosion are, under the general rule, as above stated, held to be damages by fire, and are within the risks insured against. * * From the above authorities, a rule is deducible by which to determine the character of the fire which must precede the explosion and ignite the explosive substance or cause the formation of the substance causing the explosion in order that the effects of the explosion may be taken out of the exception in contracts for the insurance against losses by fire, as in the instant cases. Such a fire is substantially defined in Home Lodge Ass’n v. Queens Ins. Co., supra [21 S.D. 165, 110 N.W. 7781, as stick a fire that, if it had pursued its natural course, would have resulted in a total or partial destruction of the property insured.
“ * * * Such a fire in the insured property, followed by an explosion during the progress of the fire as an incident of or caused by the fire, is held to be the proximate cause of the damages from the explosion as well as the fire, and within the risks insured against by the contract, although the contract excepts liability for loss by explosion. Such a fire is distingtiished from the flame of a lighted match, a lighted lamp, gas jet, cigar, or a fire ivithin a furnace or stove where it is intended to be. The former kinds of fire are usually denominated hostile in the nomenclature of the law, zohile the latter kinds cure denominated innocent fires; and, when an explosion is caused by an explosive substance coming into contact with an innocent fire alone, the effects of the explosion are attributed to the explosion as 'the proximate cause, and not the fire, and hence damages from such an explosion are within the exceptions in the contract.” (220 S.W. 541, 542.) (Emphasis added.)
In Githens v. Great American Ins. Co., supra, [201 Iowa 266, 207 N.W. 246] the facts were that a building adjacent to plaintiff’s establishment was gutted by fire and explosion. The two buildings were separated only by a brick partition wall, and the fire escaped from the burning structure into a space between the ceiling and the roof of the insu^d building, where it came into contact with an explosive substance and an explosion resulted. This explosion caused extensive damage to plaintiff’s building and its contents, but there was no fire in plaintiff’s building following the explosion. Plaintiff sued his fire insurer to recover his losses, the policy which was then in effect being a standard form of fire insurance policy, in which loss caused by explosion was specifically excluded from coverage. Although there, was no fire following the explosion, the evidence showed that there was ‘‘smoke upon the wall,” that the shims upon which the rafters rested in plaintiff’s building were “scorched and smoked,” and that some clothes in that building had been burned. The Supreme Court of Iowa affirmed the jury’s apparent finding that the explosion was preceded by a “hostile fire” in the insured building, which fire caused the explosion, and accordingly that the loss was covered by the fire insurance policy. In so holding, the Court said:
“ * * * The distinction between a lighted match or a lighted cigar, burning gas jet, a reasonable fire in a stove for heating purposes, and other innocent or ‘friendly fires,’ and a ‘hostile fire,’ is clearly recognized. * * * “ * * * The policy in suit does contain a clause absolving the company *498 from liability for damages from an explosion only. It was doubtless framed to meet the decisions holding that ‘an explosion’ was ‘a fire.’
“ * * * Appellee bought ‘fire insurance.’ The company undertook, by its policy, to insure him against all damage caused by fire. This referred to all damage resulting from a hostile fire to the property. If a hostile fire existed in appellee’s building and the subsequent explosion was an incident of the action of that hostile fire, then appellant is liable for the attendant results, under this policy. Such is the great and controlling weight of authority.” (207 N.W. 244, 245) (Emphasis added.)
Counsel for plaintiff argues, however, that Louisiana does not recognize the difference between so-called “friendly fires” and "hostile fires,” and he cites Salmon v. Concordia Fire Ins. Co. of Milwaukee, La. App.Orl., 161 So. 340, as authority for that argument. In the Salmon case plaintiffs sued one of their fire insurers for a proportionate part of the loss sustained by them from the destruction by fire of a bracelet owned by plaintiff, when the bracelet was inadvertently thrown into a trash burner located on plaintiff’s premises. The fire insurance policy in that case was a standard form of policy, insuring plaintiffs “against all direct loss or damage by fire.” The defendant resisted payment on the ground that the fire in the trash burner was a “friendly fire,” and that loss from such a fire was not “within the intendment of the parties to the insurance contract.” The Orleans Court of Appeal, in holding that plaintiffs were entitled to recover, said that no distinction between “friendly” or “unfriendly” fire was recognized in the policy, and that in either instance the loss is the direct result of the fire against which the insurer agreed to indemnify the insured. We find no fault with the holding in that case, but we do not think it is applicable here. There was no explosion in that case, and accordingly there was no occasion for the court to determine whether the loss was incidental to an explosion or incidental to a fire, which is the issue presented here. The Salmon case may serve as authority for the proposition that under a standard form of fire insurance policy, an accidental loss occasioned by fire is covered, whether the fire is friendly or hostile, and that under those circumstances no distinction should be made between those two types of fires. We, however, do not consider the Salmon case as authority for the argument that Louisiana does not recognize a difference between “friendly” and “hostile” fires in a case such as that presented here, where the loss resulted from an explosion which was preceded by a fire, and the fire insurance policy expressly excludes coverage of loss from explosion.
Counsel for plaintiff also relies on, and quotes extensively from, the case of Commercial Standard Insurance Company v. Feaster, 10 Cir., 259 F.2d 210. In that case plaintiff insurance company had issued a fire insurance policy covering a building which had been leased to defendant. The building was destroyed by an explosion, and plaintiff had paid the owner the face amount of the policy. Plaintiff, as the insurer-subrogee of the lessor, instituted this suit against defendant-lessee to recover the amount which it had paid, alleging that the building had been destroyed by explosion caused by the negligence of defendant. The defendant denied liability, contending that the building was destroyed by fire, rather than by explosion, and that under the terms of the lease he was relieved from any liability to the lessor because of destruction by fire. The evidence in that case established that a fire, which clearly would have to be classified as a hostile one, actually existed in the building before the explosion occurred. The U. S. Circuit Court of Appeals, 10th Circuit, held that under those circumstances the loss was occasioned by fire, rather than explosion, and accordingly that the trial court was correct in directing that a verdict be entered for the defendant. Although the Feaster case did not involve *499 exactly the same issue as that presented here, it appears to us that the rule applied there is entirely consistent with that set out in the Githens and Rupard cases, both of which were cited with approval in the Feaster case. The fact that only a brief interval of time elapsed between the antecedent fire and the explosion in the Feaster case, in our opinion, is not of any significance. The antecedent fire which existed in that case was not a part of the explosion. It was in progress before the explosion occurred, and if permitted to pursue its natural course it would have resulted in damage to the building, even if no explosion had occurred. The general rule applies, we think, if a fire separate and distinct from the explosion existed prior to the explosion, even though the interval of time which elapsed between those two occurrences was brief.
We think the rule set out in the Githens and Rupard cases is applicable here. If the explosion in this case was preceded by a “hostile fire,” which caused the explosion, then the explosion must be considered as being incidental to the fire, and the loss would be covered by the insurance policies issued by defendants. If the explosion, on the other hand, was preceded only by a “friendly fire,” which caused the explosion, then the loss must be considered as being incidental to the explosion, and thus the loss would be excluded from coverage under the policies. The term “hostile fire,” as used here, is one which, if it should pursue its natural course, would result in the total or partial destruction of the property insured. The term “friendly fire,” as here used, is one which is under control and is contained in the area where it is intended to be, such as the flame of a lighted match, a lighted lamp, a gas jet, a fire within a furnace or stove, or a welder’s arc.
Plaintiff contends, however, that the explosion in this case actually was preceded by a hostile fire. It is alleged that the welder’s arc ignited almost pure hydrogen gas in the upper section of the evaporator installation, which gas rapidly carried the flame downward into another area of the same installation, where the mixture of hydrogen and air was within explosive limits, and where an explosion then occurred. There is no question but that the welder’s arc was a “friendly fire,” as that term is understood. It is contended, however, that the burning of the hydrogen gas immediately prior to the explosion constituted an antecedent hostile fire, and that the explosion was an incident of and was caused by that fire
The word “explosion,” in policies such as the ones being considered here, is understood in the sense that ordinary men, not scientists, use the term. Vol. S, Apple-man, Insurance Law and Practice, Sec. 3085, page 223. It has been defined, correctly we think, as:
“ * * * 'a violent bursting or expansion, with noise, following the sudden production of great pressure, as in the case of explosives, or a sudden release of pressure, as in the disruption of a steam boiler ;***.’ ” Hart-Bartlett-Sturtevant Grain Co. v. Aetna Ins. Co., 365 Mo. 1134, 293 S.W.2d 913, 914, 917.
“ * * * The term ‘explosion’ has no fixed and definite meaning either in ordinary speech or in law. It may be described, in a general way, as sudden and rapid combustion, causing violent expansion of the air, and accompanied by a report.” Vorse v. Jersey Plate Glass Ins. Co., 119 Iowa 555, 93 N.W. 569, 570, 60 L.R.A. 838.
“ * * * Explosion varies in degrees of intensity; in the vehemence of the report; the rapidity of the combustion; the violence of the expansion. The vehemence of the reports vary in intensity as often as the occurrences multiply. Hence an explosion is an idea of degrees, and the true meaning of the word in each particular case must be settled, not by any fixed standard, or accurate measurement, but *500 by the common experience and notions of men in matters of that sort. The term is to be construed in its popular sense, and as understood by ordinary men, and not by scientific men. It may be described in general as a sudden and rapid combustion, causing a violent expansion of the air, and accompanied by a report.” Hartford Fire Ins. Co. v. Empire Coal Min. Co., 8 Cir., 30 F.2d 794, 798. (Emphasis added.)
“ ‘An explosion is a rapid, sudden, and violent expansion of air or relinquishment of energy, causing a rupture and accompanied by a loud noise, not necessarily extremely loud. Fire is perhaps the principal cause of explosions, but they may be produced without the aid of fire. * * * The acts that constitute an explosion within the meaning of the extended coverage provision of this policy must be determined from the language of the policy, the ordinary uses of the word, the common experience of men, and their general notions in matters of this sort.” Royal Sausage & Meat Co. v. Aetna Casualty & Surety Co., 99 Ohio App. 77, 117 N.E. 2d 207, 210. (Emphasis added.)
The trial judge, in finding that the petition alleges facts which describe a typical explosion and not a fire, said:
“ * * * It is true that Article 6 of the petition specifically alleges that there was a fire, but by reading the pertinent allegations as a whole, it becomes very clear that the fire mentioned is the instantaneous flame that traveled through the gaseous area to cause the explosion. Actually, the fire itself caused no damage. Nothing burned as we commonly understand the expression. No solid material was set afire.
“It appears to me that the Plaintiff described the occurrence of a typical explosion, and not a fire. A flame or a spark set off explosions by igniting combustible gases, and when this occurs it is an explosion.
If it could be held that the burning is a fire, then there would be no point in excluding explosions from insurance policies, as this is the way most explosions are caused. But even if we call it a fire the Plaintiff would gain no advantage because it suffered no loss thereby. Its only loss was caused by the explosion.”
We agree with the trial judge that the rapid burning of the hydrogen gas after it was ignited by this arc constituted a part of the explosion, and that the facts alleged in the petition describe a typical explosion, which was set off or caused by a “friendly fire,” that is the welder’s arc. According to plaintiff’s petition, therefore, the loss in this case resulted from an explosion, rather than a fire, and such loss was expressly excluded from coverage under the policies issued by defendants.
For the reasons herein assigned, therefore, the judgment of the district court is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.